**Case No. 23-40509**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Steven Hotze, M.D., Richard Mabray, M.D.,
and Allesan Paige Streeter,

*Plaintiffs-Appellants*

v.

The Texas State Senate, Austin Osborne, in his official capacity as the Sergeant-at-Arms of the Texas Senate, and Dan Patrick, in his official capacity as Lieutenant Governor of the State of Texas,

*Defendants-Appellees*

Appeal from the U.S. District Court for the
Southern District of Texas, Victoria Division (No. 6:23-cv-00036)

**EMERGENCY MOTION FOR INJUNCTIVE RELIEF BY APPELLANTS**

Andrew L. Schlafly
939 Old Chester Rd.
Far Hills, New Jersey 07931
908-719-8608
908-934-9207 (fax)

Jared Woodfill
Woodfill Law Firm, P.C.
3 Riverway Suite 750
Houston, Texas 77056
713-751-3080

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PARTIES

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusal.

**Appellants**: STEVEN HOTZE, M.D., RICHARD MABRAY, M.D., AND ALLESAN PAIGE STREETER, using undersigned counsel Andrew L. Schlafly, 939 Old Chester Rd., Far Hills, NJ, and Jared Woodfill, Woodfill Law Firm, P.C., 3 Riverway, Suite 750, Houston, TX.

**Appellee:** The Texas State Senate, Austin Osborne, in his official capacity as the Sergeant-at-Arms of the Texas Senate, and Dan Patrick, in his official capacity as Lieutenant Governor of the State of Texas, in his official capacity as Harris County Clerk, all represented by Eric J R Nichols and Cory Liu, Butler Snow LLP, 1400 Lavaca Street, Ste 1000, Austin, TX.

Dated: August 31, 2023                               /s/ Jared R. Woodfill
                                                                  Attorney for Appellants

ii

# TABLE OF CONTENTS

Page(s)

Certificate of Interested Parties.................................................................. ii

Table of Contents ................................................................................. iii

Table of Authorities ..............................................................................v

Jurisdictional Statement .........................................................................1

Statement of the Case.............................................................................1

    A. Factual Background ....................................................................2

    B. Relevant Procedural History ...........................................................6

    C. Ruling Presented for Review ..........................................................6

Summary of Argument ...........................................................................8

Argument.........................................................................................9

I. Standard of Review............................................................................9

II. Plaintiffs Have Standing as Voters to Object to the Censorship of Conversations Between Them and Their Texas Senators on This Matter of Immense Public Concern .........................................................................10

    A.    Plaintiffs Have Standing to Object to the Infringement on Their First Amendment Rights ..................................................................11

    B.    As in *Speech First*, the Climate of Censorship Further Weighs Against Allowing the Senate Rule to Censor Voters' Conversations with Senators ..............................................................13

III. On Undisputed Facts, Plaintiffs Have Satisfied All the Elements of a Preliminary Injunction, Which This Court Should Grant .......................................14

A.    Plaintiffs Have a Substantial Likelihood to Prevail
on the Merits ........................................................................15

B.    Irreparable Harm to Plaintiffs "Unquestionably" Exists . ..................18

C.    The Balance of Harms Weighs Strongly in Favor of Issuing a
Preliminary Injunction ........................................................18

D.    As a Matter of Law, the Requested Preliminary Injunction
Would Not Disserve the Public Interest ..............................19

IV. By Improperly Isolating Senators from Voters, the Senate Rule Violates
Representative Democracy ............................................................20

Conclusion ....................................................................................22

Certificate of Service ....................................................................23

Certificate of Compliance ............................................................23

**Addendum**

Decision below (Dist. Ct. Dkt. 17)

Complaint and its Exhibits (Dist. Ct. Dkt 1)

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Abraugh v. Altimus*, 26 F.4th 298 (5th Cir. 2022) ............................................. 12, 13

*ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ................................................. 18, 19

*Anibowei v. Morgan*, 70 F.4th 898 (5th Cir. 2023).............................................15

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721 (2011)......16

*Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002) (9th Ci. 2003) ..........................10

*Babbitt v. UFW Nat'l Union*, 442 U.S. 289 (1979) ................................................13

*Barilla v. City of Hous.*, 13 F.4th 427 (5th Cir. 2021) ................................................13

*Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020)...............14

*Basiardanes v. Galveston*, 682 F.2d 1203 (5th Cir. 1982) ......................................14

*Bond v. Floyd*, 385 U.S. 116 (1966) ........................................................................17

*Brooks v. Auburn Univ.*, 412 F.2d 1171 (5th Cir. 1969) .........................................15

*Brown v. Hartlage*, 456 U.S. 45 (1982)....................................................................21

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999)...................................13

*Buckley v. Valeo*, 424 U.S. 1 (1976) ............................................................. 16, 20, 21

*California Democratic Party v. Jones*, 530 U.S. 567 (2000) ....................................21

*Citizens United v. FEC*, 558 U.S. 310 (2010).................................................... 13, 16

*Cox v. Louisiana*, 379 U.S. 536 (1965) ....................................................................21

*Ctr. For Individual Freedom v. Carmouch*, 449 F3d 655 (5th Cir. 2010) ........ 10, 11

*Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*,
    760 F.3d 427 (5th Cir. 2014) ...........................................................................17

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................18

*Fairchild v. Liberty ISD*, 597 F.3d 747 (5th Cir. 2010)...........................................11

*Freedom Path, Inc. v. I.R.S.*, 913 F.3d 503 (5th Cir. 2019)....................................11

*Garrison v. State of La.*, 379 U.S. 64 (1964)............................................................17

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016)................................................18

*Higher Soc'y v. Tippecanoe City*, 858 F.3d 1113 (7th Cir. 2017)..................... 18, 19

*Houston Chronicle v. City of League City*, 488 F.3d 613 (5th Cir. 2007)................11

*Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012)......................................................22

*Lamont v. Postmaster General*, 381 U.S. 301 (1965) ...........................................15

*Lujan v. Def's of Wildlife*, 504 U.S. 555 (1992) ............................................... 11, 13

*Mahanoy Area Sch. Dist. V. B.L.*, 141 S. Ct. 2038 (2021) ......................................9

*Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003)...........................................................10

*Martin v. City of Struthers*, 319 U.S. 141 (1943) ...................................................15

*McCutcheon v. FEC*, 572 U.S. 185 (2014)...............................................................15

*Meese v. Keene*, 481 U.S. 465 (1987).......................................................................11

*NAACP v. City of Kyle, Tex.*, 626 F3d 233 (5th Cir. 2010) .......................................9

*NRA of Am., Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013) .....................................9

*Pickering v. Bd. Of Educ. Of Township High Sch. Dist. 205, Will County, Ill*, 391 U.S. 563 (1968).................................................................................................. 16, 17

*Roman Cath. Diocese of Brookly v. Cuomo*, 141 S. Ct. 63 (2020) .........................18

*Sambrano v. United Airlines, Inc.*, 45 F.4th 877 (5th Cir. 2022) .............................18

*Shaw v. Reno*, 509 U.S. 630 (1993) .........................................................................20

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020)....... iii, 10, 11, 12, 13, 14

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................................11

*Vieth v. Jubelirer*, 541 U.S. 267 (2004)...................................................................21

*Virginia v. Am. Booksellers' Ass'n, Inc.*, 484 U.S. 383 (1988)..............................10

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)............................................................8, 14

*Vitagliano v. Cty. of Westchester*, 71 F. 4th 130 (2d Cir. 2023).............................10

*Wisconsin Right To Life, Inc. v. Barland*, 751 F.3d 804 (7th Cir. 2014).................20

*Wis. Right to Life State PAC v. Barland*, 664 F.3d 139 (7th Cir. 2011)..................16

*FEC v. Wis. Right to Life, Inc.* ("*WRTL*"), 551 U.S. 449 (2007)............................13

## Constitution and Statutes

U.S. CONST. amend. I....................................................................................................6

TEX. CONST., Art. III, Sec.1 .......................................................................................3

Tex. Const., Art. XV, Sec. 3 ..................................................28

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1331 ...................................................................1

**Articles**

Senator Ted Cruz, X (formerly known as Twitter),
    @tedcruz (May 27, 2023)..................................................3

Donald Trump, Truthsocial.com, @realDonaldTrump (May 27, 2023) ...................3

The undersigned counsel hereby certify, pursuant to 5TH CIR. R. 27.3, that this motion is an emergency challenge to an unprecedented infringement on First Amendment rights by a Gag Order and associated rule to silence criticism of the removal from office of Attorney General Ken Paxton. A ruling on this motion is respectfully sought as soon as possible due to the September 5 start in the Senate proceedings. Plaintiffs would suffer irreparable harm if their request for emergency relief is not granted. In compliance with 5TH CIR. R. 27.4, Plaintiffs' counsel contacted Defendants' counsel, who indicated their opposition to this motion.

## JURISDICTIONAL STATEMENT

This appeal is brought under 28 U.S.C. § 1291 from a final judgment dated August 17, 2023, by the United States District Court, Southern District of Texas. (Dist. Ct. Dkt. 18),[1] and its accompanying Order. (Dkt. 17) Plaintiffs-Appellants filed a timely Notice of Appeal on August 28, 2023. (Dkt. 19) The district court had jurisdiction under 28 U.S.C. § 1331.

## STATEMENT OF THE CASE

Never before has our government censored political conversations between voters and their elected senators. The infringement at issue here facilitates political arm-twisting of senators to vote against the duly elected Paxton while prohibiting conversations between voters and senators to publicize what is happening.

---

[1] All of the "Dkt. __" citations here are to the district court docket in this case.

The Texas Senate adopted rules, hatched in secret and enforceable by incarceration, to prohibit voters from fully conversing with their senators about the upcoming vote on permanently removing Attorney General Ken Paxton from office, less than a year after he was reelected by a landslide of nearly 800,000 votes. This devious process may be a dry run to override a future presidential election by cutting off essential involvement by voters in an impeachment.

Senate Resolution 35 ("SR 35") adopted Senate Rule 10, as developed in secret, to censor political conversations by voters with their senators. Voters, including Plaintiffs, have a stake against this censorship of their ability to converse with their senators. Yet the district court erroneously denied standing by voters to object to Senate Rule 10 and its Gag Order, which prohibit full political conversations between them and their senators, and the lower court further erred in failing to recognize the First Amendment right to hear the views of senators.

## A. Factual Background

Ken Paxton was reelected as the Texas Attorney General by nearly 800,000 votes in November 2022. (Dkt. 1, Compl. ¶ 1)[2] General Paxton was then targeted for impeachment by political opponents whom he defeated in the 2022 Republican primary. (¶ 4) Senator Ted Cruz described this impeachment process as "a

---

2 All of the "¶ __" citations herein are to the Complaint, which is Dkt. 1 on the district court docket.

travesty."[3] Donald Trump called the impeachment "illegal, unethical and profoundly unjust" and concluded the impeachment was "ELECTION INTERFERENCE."[4] (¶ 3)

Plaintiff Steven Hotze, M.D. ("Dr. Hotze") is a resident of and registered voter in Harris County, Texas, who reached out to numerous state senators and state representatives to oppose the impeachment of General Paxton. (Dkt. 1-3, Exhibit C). Dr. Hotze reached out to Senator Bob Hall regarding the impeachment of General Paxton and received the following text response: "Dear Dr. Hotze, I am sorry, but I am banned from speaking to you about the Paxton Impeachment situation because of Lt. Gov. Patrick's Gag Order." (Dkt. 1-4, Exhibit D). Dr. Hotze also contacted Representative Steve Toth who responded, "Hello Dr. Hotze, I am unable to speak on the record about the impeachment proceedings due to Gag Order by the Court. I hope you can understand." (Dkt. 1-5, Exhibit E). When Dr. Hotze previously reached out to senators and state representatives they typically respond promptly to his texts, emails or calls, but most refused to respond to him now. (Dkt. 1-3, Exhibit C) Plaintiffs Richard Mabray, M.D. and Allesan Paige Streeter are also registered voters in Texas who object to this censorship. (¶ 11-12)

Defendant The Texas Senate is authorized by the Texas Constitution, Article III, Sec. 1. (¶ 13) Defendant Austin Osborne ("Osborn") is the Sergeant-at-Arms

---

[3] Senator Ted Cruz, X (formerly known as Twitter), @tedcruz (May 27, 2023).
[4] Donald Trump, TruthSocial.com, @realDonaldTrump (May 27, 2023).

for the Texas Senate, who is responsible for enforcing Senate Rule 10. (¶ 14)

Defendant Dan Patrick ("Patrick") is the Lieutenant Governor and President of the

Senate of Texas, who presides over the impeachment trial of Paxton and enforces

the objectionable rules. (¶ 15)

### Impeachment in the Texas House of Representatives

On May 27, 2023, just a few months after General Paxton was

overwhelmingly reelected to his third term, during the final hours of the Texas

legislative session there was a vote to impeach him merely two days after a secret

investigative committee unveiled articles of impeachment — and merely two days

before the close of a biennial legislative session. (¶ 21)

### Texas Senate's Initial Actions on the Articles of Impeachment

On May 29, 2023, which was the last day of its regular legislative session,

the Texas Senate passed a resolution creating a seven-member committee to draft

rules for the impeachment trial of General Paxton, after developing and discussing

it in secret, despite Senate rules requiring committees to provide 24-hour notice for

meetings, even if they intend to meet privately in executive session. (¶ 22)

Following two days of back-room dealing concealed from the public, on

June 21, 2023, The Texas Senate approved without even a floor debate, by a vote

of 25-3, Senate Resolution No. 35 ("S.R. 35"). (Dkt. 1-1, Exhibit A) This process

excluded Texans from participating and having their voices heard in a proceeding

that could result in disenfranchising many millions of Texans from their voting preference. (¶ 23)

### S.R. 35, Rule 10 and its Gag Order

The newly adopted Senate Rule 10 censors meaningful conversations between voters and legislators as follows:

> "**Gag Order**. (a) A Gag Order that meets state and federal law standards shall be issued by the presiding officer of the court as soon as practicable after adoption of the rules for the court of impeachment.
>
> (b) **Communication Rules**. No members of the court, staff of members of the court, presiding officer of the court, and legal counsel of the presiding officer **shall discuss or comment on any matter relating to the merits of the proceedings before the court of impeachment with Warren Kenneth Paxton, Jr.**, and his counsel, the House Board of Managers and their counsel, **or any persons** other than members of the court, the presiding officer of the court, legal counsel to the presiding officer, or staff or legal counsel to members of the court." (¶ 36, quoting Rule 10, emphasis added)

On July 17, 2023, Lieutenant Governor Patrick signed and imposed this broad Gag Order, effective immediately, which imposes incarceration of up to six months in a county jail and a fine of up to $500 on violators. (Dkt. 1-2, Exhibit B).

Senate Rule 10 and the Gag Order (Dkt. 1-2, Exhibit B) prohibit meaningful conversations between voters and their senators on this matter of statewide importance, thereby silencing the voice of the people and infringing on the constitutional rights of Plaintiffs and all Texans. (¶ 38) Texas voters are prevented by the Gag Order from hearing the impressions, positions, and views of Texas senators during the Paxton impeachment trial. (¶ 41) Defendants' conduct infringes

on Plaintiffs' First Amendment right to hear and thereby speak about what they heard, and has a further chilling effect on their protected First Amendment rights. (¶ 45)

Plaintiffs seek a preliminary injunction preventing Defendants from implementing and enforcing Senate Rule 10 (Dkt. 1-1, Exhibit A) and the accompanying Gag Order (Dkt. 1-2, Exhibit B). Without immediate relief, Plaintiffs will suffer imminent and irreparable harm from the censorship of meaningful conversations between them and their elected representatives. (¶ 78) Plaintiffs seek a declaration that Senate Resolution 35, Rule 10 and its companion Gag Order violate the First Amendment, U.S. CONST. amend. 1, and request a preliminary injunction to block their enforcement. (¶ 82)

### B. Relevant Procedural History

Plaintiffs filed their Complaint on August 3, 2023. (Dkt. 1, attached hereto) Plaintiffs subsequently filed their motion for a preliminary injunction along with a supporting brief and exhibits on August 7. (Dkt. 3 & 4) The district court held a hearing on August 16, and rendered its decision the following day.  (Dkt. 17 & 18) Plaintiffs then timely filed their Notice of Appeal on August 29. (Dkt. 19)

### C. Ruling Presented for Review

In its Order Dismissing Case for Lack of Subject Matter Jurisdiction, the district court held that Plaintiffs lacked standing to object to the Senate Rule that

prohibits senators (and representatives) from speaking with Plaintiffs about this issue. (Dkt. 17, Slip op. 7-10, attached hereto) (Plaintiffs do not challenge in this motion the additional holding on the disqualification of Sen. Angela Paxton.)

After recounting the factual background and applicable legal standard (*id.* 1-5), the decision below dismissed this case based on its analysis of the impact of the Gag Order. (*Id.* 8-10) The district court denied standing by finding that Plaintiffs "want to be able to send, not receive, communication" (*id.* 9), despite how Plaintiffs specifically objected to the censorship of their ability to receive communications and even quoted from statements by Texas legislators to that effect. *See* Factual Background, *supra*. The district court held that there is a lack of standing because "nothing in the Gag Order prevents [Plaintiff Hotze] from telling anyone his position on the impeachment and its processes. Thus, the requested relief would not redress the harm he professes to suffer." (Slip op. 10)

The district court held that "Plaintiffs have not attested that anything about their lives would be different if they did get a communicative response from legislators," and thus Plaintiffs "have not demonstrated injury in fact." (*Id.* 9) The district court quoted at length from a Supreme Court decision ruling in favor of a constitutional right to receive commercial speech about the pricing of prescription medications, and the court distinguished that decision based on how censored information in that case "could mean the alleviation of ***physical pain or the***

7

*enjoyment of basic necessities.*" (Slip op. 6, quoting *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 763-64 (1976), with the district court adding the emphasis) The district court found dispositive that "Plaintiffs have not identified any such benefit to receiving any information subject to the Gag Order in this case." (Slip op. 6)

## SUMMARY OF ARGUMENT

The purpose and effect of Senate Rule 10 and the Gag Order are obvious: to quell and ostracize public opinion that stands against misusing impeachment to override an election. This censorship cannot properly be done by a Senate rule any more than by a statute or regulation. Any judicial deference as to how a legislative body conducts its internal affairs must yield to voters' First Amendment rights to have full conversations with their senators on issues of political significance.

The censoring of conversations between voters and their senators by Senate Rule 10 and the Gag Order are a devious, but unconstitutional, way to marginalize and silence voters about the removal of a statewide official whom voters reelected in a landslide last November. The Gag Order permits powerful opponents of Paxton to arm-twist, browbeat, politically threaten (as in vowing to cut off campaign donations), engage in classic smoke-filled room tactics, and otherwise pressure individual senators to vote against Paxton, while they are prevented from enlisting their constituents against the pressure. As recently emphasized by the

8

Supreme Court, "Our representative democracy only works if we protect the 'marketplace of ideas.' This *free exchange* facilitates an informed public opinion, which, *when transmitted to lawmakers*, helps produce laws that reflect the People's will." *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021) (emphasis added).

The decision below erroneously failed to recognize voters' standing to object when the voters' right to have political conversations with their senators is infringed. The lower court further erred in holding that the First Amendment merely protects a one-sided right to speak, when many precedents establish that the right to exchange and hear speech is equally safeguarded. Senate Rule 10 improperly muzzles voters, in violation of the First Amendment, by gagging political conversations.

## ARGUMENT

### I. Standard of Review.

Review is *de novo* here, because the dismissal below was for a lack of standing. "This court reviews questions of standing *de novo*." *NRA of Am., Inc. v. McCraw*, 719 F.3d 338, 343 (5th Cir. 2013) (citing *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 236 (5th Cir. 2010)).

## II. Plaintiffs Have Standing as Voters to Object to the Censorship of Conversations Between Them and Their Texas Senators on This Matter of Immense Public Concern.

"It is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020) (Jones, J.). Standing exists in challenges, as here, to censorship of political speech due to "the very special nature of political speech itself." *Id.* (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2010), inner quotations omitted). *See also Vitagliano v. Cty. of Westchester*, 71 F.4th 130, 140 & n.5 (2d Cir. 2023) (adopting the foregoing *Speech First* precedent and citing other Circuits and the Supreme Court for the same principle); *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (a plaintiff who was compelled to change political behavior had standing); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (Posner, J.) (if a statute even "arguably covers" plaintiff's speech, "and so may deter constitutionally protected expression ..., there is standing") (citing *Virginia v. Am. Booksellers' Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988)).

Plaintiffs easily satisfy the requirement for standing as reiterated by this Court in *Speech First*. Generally, "[t]o have standing, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." 979 F.3d

10

at 330 (quoting *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560-61 (1992)). This Fifth

Circuit explained:

> A plaintiff has suffered an injury in fact if he (1) has an "intention to engage in a course of conduct arguably affected with a constitutional interest," (2) his intended future conduct is "arguably ... proscribed by [the policy in question]," and (3) "the threat of future enforcement of the [challenged policies] is substantial."

*Speech First*, 979 F.3d at 330 (quoting *Susan B. Anthony List v. Driehaus*, 573

U.S. 149, 161-64 (2014)). Plaintiffs meet all of these requirements.

### A.    Plaintiffs Have Standing to Object to the Infringement on Their First Amendment Rights.

As to the threshold injury-in-fact requirement, this Fifth Circuit "has

repeatedly held, in the pre-enforcement context, that '[c]hilling a plaintiff's speech

is a constitutional harm adequate to satisfy the injury-in-fact requirement.'"

*Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007)

(quoting *Meese v. Keene*, 481 U.S. 465, 473 (1987)). *See also Freedom Path, Inc.*

*v. I.R.S.*, 913 F.3d 503, 507 (5th Cir. 2019) (same); *Fairchild v. Liberty ISD*, 597

F.3d 747, 754-55 (5th Cir. 2010) (same); *Ctr. for Individual Freedom v.*

*Carmouche*, 449 F.3d 655, 660 (5th Cir. 2010) ("As the district court noted,

the First Amendment challenge has unique standing issues because of the chilling

effect, self-censorship, and in fact the very special nature of political speech

itself.") (inner quotations omitted).

Senate Rule 10 even threatens incarceration for any violation of its censorship of conversations between voters and their senators. To say the least, "the threat of future enforcement of the [Senate Rule 10] is substantial" with that kind of draconian penalty. *Speech First*, 979 F.3d at 330 (inner quotations omitted). In this climate where the former president and frontrunner for reelection as president in 2024 was recently arrested with his mugshot taken for his conversations with Georgia officials, this threat in Senate Rule 10 is very real and more than enough to support standing. *See id.* at 339 ("In our current national condition ….," infringements on the First Amendment cannot be ignored).

By finding a lack of injury-in-fact, the district court misapplied *Abraugh v. Altimus*, 26 F.4th 298 (5th Cir. 2022) (cited by Slip op. 7). There this Court actually reversed a dismissal based on standing. Moreover, the First Amendment was not even implicated in that litigation, which was a wrongful death case, so the more relaxed test for standing in the context here was not even an issue in *Abraugh*. The lower court did not doubt that Plaintiffs are prevented from fully conversing with their senators, and that Plaintiffs are denied hearing "[w]hether legislators agreed, disagreed, or simply commiserated with Plaintiffs." (Slip op. 9) That is enough for a First Amendment claim.

The Supreme Court has repeatedly extended special protection for "political speech" and invalidated virtually every state action that hinders it:

12

> political speech must prevail against laws that would suppress it, whether by
> design or inadvertence. Laws that burden political speech are 'subject to
> strict scrutiny,' which requires the Government to prove that the restriction
> "furthers a compelling interest and is narrowly tailored to achieve that
> interest." *WRTL,* 551 U.S., at 464, 127 S. Ct. 2652, 168 L. Ed. 2d
> 329 (opinion of Roberts, C. J.).

*Citizens United v. FEC*, 558 U.S. 310, 340 (2010). This Fifth Circuit has observed

that "[w]hile it is true that *Speech First* involved political speech—which is

generally ***entitled to heightened constitutional protection***, *see Buckley v. Am.*

*Const. L. Found., Inc.*, 525 U.S. 182, 207-08 (1999) (Thomas, J., concurring)

(collecting cases)—neither Supreme Court nor Fifth Circuit precedent limits this

rule to political speech claims." *Barilla v. City of Hous.*, 13 F.4th 427, 432 n.2 (5th

Cir. 2021) (citing *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 301-02 (1979); *see*

*also Speech First*, 979 F.3d at 335, emphasis added).

The other two prongs of the standing test – traceability and redressability –

are likewise met by Plaintiffs here. *See Abraugh,* 26 F.4th at 304 (citing *Lujan v.*

*Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)). If this Court enjoins Senate Rule

10 and the Gag Order, then political conversations between voters and senators can

occur freely again without the unconstitutional chilling effect.

**B.    As in *Speech First*, the Climate of Censorship Further Weighs Against Allowing the Senate Rule to Censor Voters' Conversations with Senators.**

The unanimous decision of this Court in *Speech First* applies here:

13

> In our current national condition, … courts must be especially vigilant against assaults on speech in the Constitution's care. Otherwise, the people may not be free to generate, debate, and discuss both general and specific ideas, hopes, and experiences, to transmit their resulting views and conclusions to their elected representatives, to influence the public policy enacted by elected representatives, and thereby to realize the political and human common good.

*Speech First*, 979 F.3d at 339 (inner quotations and footnotes omitted).

Yet Senate Rule 10 and the Gag Order directly and fully censor an entire category of discussions between voters and "elected representatives," thereby directly hindering the ability of voters "to influence the public policy." *Id.* (quoting *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2358 (2020) (Breyer, J., concurring in part)).

### III.    On Undisputed Facts, Plaintiffs Have Satisfied All the Elements of a Preliminary Injunction, Which This Court Should Grant.

The First Amendment right of freedom of speech is not limited to protect only voters' statements, but also necessarily includes the voters' right to converse with, listen to, hear, and dialog with their legislators. Voters have a right not merely to comment, but to hear the reaction to their comments and learn legislators' views in order to rebut or promote them. The decision below committed an error of law in failing to recognize this fundamental right.

"The First Amendment protects the right to hear as well as to speak." *Basiardanes v. Galveston*, 682 F.2d 1203, 1211 (5th Cir. 1982) (quoting *Virginia State Board of Pharmacy*, 425 U.S. at 748). "The First Amendment, applicable to a

14

state university through the Fourteenth Amendment, embraces the right to hear."

*Brooks v. Auburn Univ.*, 412 F.2d 1171, 1172 (5th Cir. 1969) (citing *Martin v. City of Struthers*, 319 U.S. 141 (1943); *Lamont v. Postmaster General*, 381 U.S. 301 (1965)).

The remedy for an ongoing infringement of rights under the U.S. Constitution is of course available here in federal court. The standard for a preliminary injunction is that it should be granted when the following four elements are satisfied, all of which are satisfied here:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023).

## A. Plaintiffs Have a Substantial Likelihood to Prevail on the Merits.

Senate Rule 10 and the Gag Order are being imposed here to censor political speech based solely on its content. Defendants cannot possibly satisfy the applicable, exceedingly high requirement of strict scrutiny.

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *McCutcheon v. FEC*, 572 U.S. 185, 210 (2014) (citation omitted). "'There is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of

governmental affairs, includ[ing] discussion[] of candidates [and elected officials].'" *Id.* at 151-52 (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011)).

The free flow of political speech "is central to the meaning and purpose of the First Amendment." *Citizens United v. FEC*, 558 U.S. 310, 329 (2010). "[U]nencumbered discussion about political candidates and issues is 'integral to the operation of the system of government established by our Constitution.'" *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 151-52 (7th Cir. 2011) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)). "The right of citizens **to inquire, to hear**, to speak, and **to use information to reach consensus** is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United*, 558 U.S. at 339 (emphasis added). The core value underlying the Free Speech Clause of the First Amendment is the "public interest in having free and unhindered debate on matters of public importance." *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 573 (1968).

Plaintiffs engage in constitutionally protected political speech, *i.e.*, they have tried to speak with their state representative and senators regarding a matter of statewide importance only to be rebuffed based on the Senate Rule 10 and the Gag Order. (Exhibits C-E) Due directly to Senate Rule 10 and the Gag Order, the state representative and senators have refused to speak with or consider Plaintiffs' views

16

regarding the impeachment of General Paxton. (*Id.*) This directly infringes on Plaintiffs' right to converse and hear under the First Amendment.

In multiple cases the Supreme Court upheld First Amendment protections of the speech of elected officials, affording that speech as robust protection as the speech of public citizens. *See, e.g.*, *Bond v. Floyd*, 385 U.S. 116, 135-36 (1966) ("The manifest function of the First Amendment in representative government requires that legislators be given the widest latitude to express their views on issues of policy."); *Pickering*, 391 U.S. at 574 ("statements by public officials on matters of public concern must be accorded First Amendment protection") (citing *Garrison v. State of La.*, 379 U.S. 64 (1964)).

Defendants cannot show that Rule 10 and the Gag Order at issue further a compelling interest and are narrowly tailored to achieve that interest. *See Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 438 (5th Cir. 2014). Defendants allow pressure groups, powerful senators, and others to arm-twist every senator during the trial, while censoring conversations with voters.

Commercial speech is not typically afforded this highest level of judicial scrutiny, namely strict scrutiny, that is applied to the political speech at issue here. The extensive quote by the district court below was to a commercial speech case. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756-57 (1976) (quoted by Slip op. 8-9) With that the district court looked for some kind

of personal harm that might accrue against Plaintiffs if they did not receive the political information from their senators, and found none. (*Id.* at 9) But no one needs to incur any personal harm to assert successfully his constitutional right to hear political speech.

## B. Irreparable Harm to Plaintiffs "Unquestionably" Exists.

Plaintiffs have suffered – and continue to suffer – irreparable harm, and "violations of the First Amendment have long been deemed irreparable. As the Supreme Court has held for decades, '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)." *Sambrano v. United Airlines, Inc.*, 45 F.4th 877, 879 (5th Cir. 2022) (Ho, J., concurring). *See also Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016) (same); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (same).

## C. The Balance of Harms Weighs Strongly in Favor of Issuing a Preliminary Injunction.

Just as "the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional," *Higher Soc'y v. Tippecanoe City*, 858 F.3d 1113, (7th Cir. 2017) (quoting *Alvarez*, 679 F.3d at 590), one can imagine little harm, much less irreparable harm, to a governmental party who is enjoined from censoring political speech related to a matter of statewide importance. *See id*. (finding that the balance of harms, including harm to the

nonmoving party by the granting of an injunction, typically favors granting a preliminary injunction in First Amendment cases). In a First Amendment case, as here, "the balance of harms normally favors granting preliminary injunctive relief." *Higher Soc'y, 858 F.3d at 1116; see also Alvarez*, 679 F.3d at 589*; Korte*, 735 F.3d at 666.

The injury to Plaintiffs – the loss of their ability to communicate and dialog with their duly elected officials without recourse – outweighs any damage that would be caused by an injunction prohibiting the enforcement of Rule 10 and the Gag Order. The Defendants are unable to articulate any harm, let alone any harm comparable to that suffered by Plaintiffs if their First Amendment rights are trampled on. Defendants take an oath and affirmation to be impartial. TEX. CONST., Art. XV, Sec. 3. That oath eliminates any potential harm resulting from communications that state senators may have with their constituents or other Texans. Moreover, no harm can result from Plaintiffs communicating with their state representatives in the House regarding the impeachment of General Paxton, yet that too is being unconstitutionally gagged by Defendants.

### D. As a Matter of Law, the Requested Preliminary Injunction Would Not Disserve the Public Interest.

The recommended injunction will not disserve the public interest. As a matter of law, similar to the "irreparable harm" factor, the "public interest" factor is also categorically met if First Amendment freedoms are at stake. "'[I]njunctions

protecting First Amendment freedoms *are always in the public interest*.'"

*Wisconsin Right To Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014)

(quoting *ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012), emphasis added).

The public has an interest in dialoging with their legislators on this matter of
tremendous public concern. By enjoining Senate Rule 10 and the Gag Order and
allowing Plaintiffs to communicate with their legislators regarding this issue of
public concern, this Court would advance this public interest.

### IV. By Improperly Isolating Senators from Voters, the Senate Rule Violates Representative Democracy.

"This is altogether antithetical to our system of representative democracy,"
the Supreme Court held while invalidating a legislative scheme that induced
"elected officials [to be] more likely to believe that their primary obligation is to
represent only the members of that group, rather than their constituency as a whole.
*Shaw v. Reno*, 509 U.S. 630, 648 (1993). That oft-cited decision struck down a
state legislative redistricting plan, and the principles of "representative democracy"
embraced by that decision and others stand against the Senate Rule and Gag Order
that cut off conversations between senators and voters.

The Supreme Court has warned against allowing "the integrity of our system
of representative democracy [to be] undermined." *Buckley v. Valeo*, 424 U.S. 1,
26-27 (1976). Gagging senators so that they cannot speak with their constituents,
on the issue of permanently removing a statewide official elected in a landslide,

20

directly undermines representative democracy. If evidence justifying removal of General Paxton from office exists, then nothing is to be feared in allowing senators to discuss that with their constituents. The only plausible motivation for the Gag Order and Senate Rule 10 is to coerce senators into removing an elected official on flimsy evidence, over constituents' objections.

"'Representative democracy in any populous unit of government *is unimaginable* without the ability of citizens to band together in promoting among the electorate candidates who espouse their political views.'" *Vieth v. Jubelirer*, 541 U.S. 267, 314 (2004) (Kennedy, J., concurring) (quoting *California Democratic Party* v. *Jones,* 530 U.S. 567, 574 (2000), emphasis added).  The Supreme Court emphasized that:

> Our cases have often noted the close connection between our Nation's commitment to self-government and the rights protected by the First Amendment. See, *e.g., Brown* v. *Hartlage*, 456 U.S. 45, 52, 102 S. Ct. 1523, 71 L. Ed. 2d 732 (1982) ("At the core of the First Amendment are certain basic conceptions about the manner in which political discussion in a representative democracy should proceed"); *Buckley* v. *Valeo*, 424 U.S. 1, 93, n. 127, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976) *(per curiam)* ("[T]he central purpose of the Speech and Press Clauses was to assure a society in which *'uninhibited, robust, and wide-open' public debate* concerning matters of public interest would thrive, for only in such a society can a healthy representative   democracy flourish"); *Cox v. Louisiana*,   379   U.S. 536, 552, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965) ("Maintenance of the opportunity for *free political discussion is a basic tenet of our constitutional democracy*") ….

*Knox v. SEIU, Local 1000*, 567 U.S. 298, 308-09 (2012) (emphasis added). Senate

Rule 10 and the Gag Order violate these norms of representative government with

censorship. George Orwell would turn over in his grave at this.

## CONCLUSION

Plaintiffs-Appellants respectfully request that this Court reverse the decision

below, find that standing exists for Plaintiffs, and enjoin Defendants from

enforcing Senate Rule 10 and the Gag Order such that voters become free to have

full conversations with all the senators and representatives about issues related to

the Paxton impeachment, including allowing voters to hear what legislators say.

Dated:  August 31, 2023          Respectfully submitted,

**WOODFILL LAW FIRM, PC**

  /s/ Jared R. Woodfill
Jared R. Woodfill
Woodfill Law Firm, P.C.
3 Riverway Suite 750
Houston, Texas 77056
Tel: 713-751-3080
Fax: 713-751-3058
Email: jwoodfill@woodfilllaw.com

Andrew L. Schlafly
939 Old Chester Road
Far Hills, New Jersey 07931
Tel: 908-719-8608
Fax: 908-934-9207
Email: aschlafly@aol.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, thereby providing service on all parties.

/s/ Jared R. Woodfill
Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements pursuant to Fed. R. App. P. 32(a):

1. This motion complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this motion contains 5,195 words excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: August 31, 2023

/s/ Jared R. Woodfill
Attorney for Appellants

# ADDENDUM

United States District Court
Southern District of Texas
**ENTERED**
August 17, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STEVEN F. HOTZE, M.D., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:23-CV-00036 |
| | § | |
| THE TEXAS STATE SENATE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER DISMISSING CASE FOR
LACK OF SUBJECT MATTER JURISDICTION**

Plaintiffs Steven Hotze, M.D., Richard Mabray, M.D., and Allesan Paige Streeter filed this action against Defendants the Texas State Senate, Austin Osborne in his official capacity as the Sergeant-at-Arms of the Texas Senate, and Dan Patrick in his official capacity as Lieutenant Governor of the State of Texas. Plaintiffs complain of rules implemented for the Senate impeachment trial of Attorney General Ken Paxton (AG Paxton) in the form of (1) a gag order and (2) the conflict-of-interest disqualification of Senator Angela Paxton (Senator Paxton) to act as a member of the impeachment court. Plaintiffs assert that the rules violate their constitutional rights to free speech, to petition the government for redress of grievances, and the right to equal protection of the laws with respect to the one person, one vote rule. D.E. 1.

Before the Court is Plaintiffs' Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction (D.E. 3, 4). Plaintiffs assert that this matter is an

1 / 12

emergency because the impeachment trial is set to begin on September 5, 2023, just weeks away. Plaintiffs had Defendants served with the lawsuit on August 11, 2023. D.E. 12, 13, 14. Defendants filed their response on August 16, 2023. D.E. 16. Defendants assert that this Court does not have jurisdiction to hear the case and that, if reached, Defendants prevail on the merits of the motion. Defendants also moved, in the context of their response, to dismiss the case under Federal Rule of Civil Procedure 12(b)(1). D.E. 16, p. 2.

On August 16, 2023, the Court heard the matter and each of the parties appeared through counsel and presented arguments. For the reasons set out below, the Court **GRANTS** the motion to dismiss (D.E. 16, p. 2) and **DISMISSES** this case in its entirety for lack of subject matter jurisdiction.

## BACKGROUND

**Impeachment Process**. The Texas constitution vests the power of impeachment (bringing charges) in its House of Representatives. Tex. Const. Art. 15, § 1. The impeachment trial of the Texas Attorney General is delegated to the Texas Senate and is to constitute an impartial trial, with a two-thirds vote necessary to convict. *Id.*, §§ 2, 3. Generally, a senator "who has a personal or private interest in ***any*** measure or bill, proposed, or pending before the Legislature, shall disclose the fact to the House, of which he is a member, and shall not vote thereon." *Id.*, Art. 3, § 22 (emphasis added).

On May 29, 2023, the Texas House of Representatives issued articles of impeachment against the Texas Attorney General, Warren Kenneth Paxton, Jr. H. Res.

2 / 12

2377, 88th Leg. Sess. (Tex.). The Texas Senate has scheduled a trial on the impeachment charges for September 5, 2023. S. Res. 35, 88th Leg. (1st Special Sess.) (Tex. June 21, 2023). Senate Resolution 35 contains the rules by which the impeachment trial is to be conducted.

**Gag Order**. Rule 10(a) provides that a Gag Order shall be issued. D.E. 4-1, p. 8. Rule 10(b) prohibits impeachment trial decision-makers from discussing the proceedings with the adversaries (House Board of Managers and AG Paxton), their counsel, or anyone other than the impeachment court and its attorneys, officers, and staff—a prohibition of ex parte communications. Last, Rule 10(c) prohibits members from advocating a position on the merits of the impeachment matter prior to deliberations—prohibiting efforts to prejudice the proceedings.

On July 17, 2023, Dan Patrick, as Presiding Officer of the Court of Impeachment, issued a Gag Order (D.E. 4-2) as contemplated by Rule 10(a). The Gag Order is accompanied by a summary of evidence that Patrick considered in which advocates, both for and against impeachment, made prejudicial statements in the media. D.E. 4-2, p. 5. The Gag Order contains findings regarding the extensive publicity surrounding the impeachment proceedings and the serious and imminent harm that existing and expected publicity threatens to the impartial nature of the proceedings. It also finds that, because of the nature of the proceedings, lesser measures to avoid the harm are not available. For instance, the jurors in the impeachment proceedings—all Texas Senators who do not have a conflict of interest—are already determined, and the jury cannot be recomposed. Patrick

found that, if exposed to prejudicial advocacy in the media—particularly by others who are part of the decision-making process—the fairness of the trial is placed in serious jeopardy.

The Gag Order is limited, in that it only applies to the participants in the impeachment proceedings—not the media or the public. D.E. 4-2. It applies to statements that are reasonably expected to be disseminated by the media—not private statements to be held in confidence. And it prohibits such acts with a *mens rea* to materially prejudice the proceedings or interfere with a fair trial. Recitations of the public facts involved in the trial, without comment, are permitted.

**Senator Paxton**. Members of the Senate serve as members of the court and as jurors. Rules 2, 8, 16. A member with a conflict of interest, particularly the spouse of the party being impeached (Senator Paxton), is not permitted to participate in any decision:

> **Conflict**. A member of the court who is the spouse of a party to the court of impeachment is considered to have a conflict pursuant to Article III, Section 22, of the Texas Constitution. Such member of the court shall be seated in the court of impeachment pursuant to Article 15 of the Texas Constitution. However, ***such member of the court shall not be eligible to vote on any matter, motion, or question, or participate in closed sessions or deliberations***.
>
> Notwithstanding any other rule, a member of the court who is the spouse of a party to the court of impeachment shall be considered present and eligible only for the purpose of calculating the number of votes required for any and all matters, motions, and questions under these rules.

D.E. 4-1, pp. 28-29 (Rule 31) (emphasis added).

**Contentions**. Plaintiffs assert that the Gag Order tramples on their First Amendment right to freedom of speech and to petition the government for redress of

grievances. That is because they have attempted to discuss matters relating to the impeachment of AG Paxton with legislators involved in the process, but those persons have responded that they are prohibited from discussing the matter by the Gag Order. They also assert that, by disqualifying Senator Paxton from participating in deliberations and voting on the matters before the court of impeachment, her constituents have been disenfranchised in violation of the one person, one vote rule.

**Proceedings**. According to representations in Defendants' response and in open court by both parties, a similar action was filed in July 2023, challenging the Gag Order and the disqualification of Senator Paxton on Texas constitutional grounds in a Travis County, Texas district court. The state court has set a hearing on the application for a temporary restraining order for August 18, 2023. This federal action was filed after the state court action, on August 3, 2023.

This Court's August 16, 2023 hearing was strictly conducted on the request for a temporary restraining order and not for a preliminary injunction. Consequently, the Court did not hear evidence. Both sides of this dispute did, however, through their respective counsel, provide argument.

## STANDARD OF REVIEW

Federal courts have an affirmative duty to examine sua sponte the basis for subject matter jurisdiction. *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). When Federal Rule of Civil Procedure 12(b)(1) is invoked during a dispute on the merits, the court should address the jurisdictional attack before addressing any attack on the merits.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom.*, *Cloud v. United States*, 536 U.S. 960 (2002). Rule 12(b)(1) requires dismissal for lack of subject matter jurisdiction if the court lacks statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The burden of proof is on the party asserting jurisdiction—Plaintiffs, here. *Ramming*, 281 F.3d at 161. In examining a Rule 12(b)(1) motion, the court is empowered to consider matters of fact that may be in dispute. "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

## DISCUSSION

Defendants challenge the Court's jurisdiction on the following bases: (1) Plaintiffs' lack of standing to sue; (2) sovereign immunity; (3) legislative immunity; (4) judicial immunity; and (5) federalism and abstention doctrines. So long as the Court determines its jurisdiction first, there is no mandatory "sequencing of jurisdictional issues" among multiple jurisdictional challenges. *Daves v. Dallas Cnty., Tex.*, 64 F.4th 616, 623 (5th Cir. 2023) (en banc) (citing *Sinochem Intern. Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)).

### A. Standing Rubric

Article III standing, the only type of standing required for this Court to have jurisdiction, "exists at the pleading stage when a plaintiff plausibly alleges (1) an 'injury in fact,' (2) that is 'fairly traceable to the challenged action of the defendant,' and (3) that is 'likely ... redress[able] by a favorable decision.'" *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Injury in fact means that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury," which is "concrete and particularized," as well as "actual or imminent," not "speculative, conjectural, or hypothetical." *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983), *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010), and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

> "To show traceability, a plaintiff must allege that his injury is 'connect[ed] with the conduct about which he complains.' " *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 335 (5th Cir. 2021) (alteration in original) (quoting *Trump v. Hawaii*, —— U.S. — —, 138 S. Ct. 2392, 2416, 201 L.Ed.2d 775 (2018)). Meanwhile, to establish redressability, a plaintiff must show a "substantial likelihood" that the requested relief will remedy the alleged injury in fact. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 45, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

*Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022).

**B. Gag Order**

The Court notes that the Gag Order does not purport to govern Plaintiffs' conduct. They are not legislators, parties, witnesses, or otherwise involved in the conduct of the impeachment trial. And they do not purport to represent the interests of those third parties. While they argued that the Gag Order is broad[1] and covers unspecified "agents" of the persons more specifically bound, they do not purport to be such agents, only that they might want to talk with them and will be told that the agents cannot respond.

Plaintiffs predicate their First Amendment claim on the violation of a right to receive communications from those persons who are subject to the Gag Order. Yet there is no evidence that anything that the putative speakers would have to say will have any meaningful impact on Plaintiffs. Plaintiffs cite *Basiardanes v. City of Galveston* for the proposition that they have standing in this situation. 682 F.2d 1203, 1211 (5th Cir. 1982), *abrogated on other grounds by City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). That case cites *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 763–64 (1976), a commercial speech case. There, the question was whether the state could prevent pharmacists from advertising the prices of their prescription medications.

The Supreme Court relied heavily on the importance of the regulated information for the well-being of the recipients of the communication:

---

[1] Plaintiffs have not challenged the Gag Order as constitutionally overbroad.

> As to the particular consumer's interest in the free flow of commercial information, that interest may be as keen, if not keener by far, than his interest in the day's most urgent political debate. Appellees' case in this respect is a convincing one. Those whom the suppression of prescription drug price information hits the hardest are the poor, the sick, and particularly the aged. A disproportionate amount of their income tends to be spent on prescription drugs; yet they are the least able to learn, by shopping from pharmacist to pharmacist, where their scarce dollars are best spent. When drug prices vary as strikingly as they do, information as to who is charging what becomes more than a convenience. It could mean the alleviation of ***physical pain or the enjoyment of basic necessities***.

*Id.* (footnote omitted; emphasis added).  Plaintiffs have not identified any such benefit to receiving any information subject to the Gag Order in this case.

In particular, Plaintiffs have not attested that anything about their lives would be different if they did get a communicative response from legislators.  Whether legislators agreed, disagreed, or simply commiserated with Plaintiffs, Plaintiffs will not have any greater power to affect the impeachment proceeding from "receiving" communication than they would have by taking the action already available to them of expressing their opinions to representatives and those controlling the process.  They have not demonstrated injury in fact.

While Plaintiffs insist that their concern is a right to receive communication, the evidence and arguments indicate that, instead, Plaintiffs' desire is to inform their representatives that they support AG Paxton and that they disagree with the way in which the impeachment is proceeding.  They want to be able to send, not receive, communication.  In his affidavit, Plaintiff Hotze states that he wanted to talk with State Representative Steve

Toth and Bob Hall to express "the concerns I had with, among other things, the process."
D.E. 4-3.    And he wanted to talk to others to let them know his position on the
impeachment.    *Id*.    Yet nothing in the Gag Order prevents him from telling anyone his
position on the impeachment and its processes.    Thus, the requested relief would not redress
the harm he professes to suffer.

Plaintiffs have not shown that they have standing to proceed on their challenge to
the Gag Order.

### C. Disqualification of Senator Paxton

With respect to the disqualification issue, Plaintiffs predicate standing on their
"disenfranchisement" when they are constitutionally entitled to "one person, one vote."
This argument is flawed in two important respects.    First, they do not argue that Senator
Paxton is free of any conflict of interest in the impeachment of her husband.    Rather, they
take the position that any time an elected representative is unable to deliberate or cast a
vote due to a conflict of interest, their entire constituency has *ipso facto* been
disenfranchised.    They have not cited any authority for the proposition that no legislator,
member of a court of impeachment, or juror may ever be disqualified for a conflict of
interest.    Such a challenge would implicate not just SR 35, but the Texas constitution, Art.
3, § 22, and countless other rules and regulations pertaining to fair legislative, judicial, and
impeachment proceedings. They have not demonstrated an injury in fact by precluding a
legislator who has a conflict of interest from participating in the impeachment proceedings.

Second, their reliance on the one person, one vote rule is misplaced. Plaintiffs have not cited any authority that this rule applies to any scenario outside of legislative apportionment. And even in apportionment cases, the basis for the rule is the equal protection of the law. *Reynolds v. Sims*, 377 U.S. 533, 561 (1964). But equal protection jurisprudence is based on discrimination. And the basis for discrimination cited in support of the one person, one vote rule in *Reynolds* was location of the voter's residence. *See also, Evenwel v. Abbott*, 578 U.S. 54, 59 (2016) (applying the one person, one vote rule to the drawing of legislative districts). But here, there is no discrimination against voters. Indeed, there is no discrimination because there is a sound basis for disqualification of the impeachment defendant's spouse: conflict of interest.

Plaintiffs have not shown that there is a constitutional right to have a legislator with a conflict of interest act in a matter that is materially related to that conflict, despite that conflict. Much less do they show that they will sustain an injury in fact as a result. Indeed, the provision in SR 35, Rule 31 that Senator Paxton be seated for purpose of determining the necessary number of votes makes the ability of the rest of the Senate to convict her husband more difficult. A two-thirds majority is required to convict. Anything less results in an acquittal. Given that Plaintiffs support AG Paxton and oppose the impeachment proceedings, Rule 31 disqualifying Senator Paxton does not disadvantage them with respect to the vote.

Plaintiffs have not demonstrated an injury in fact related to the disqualification of Senator Paxton.

11 / 12

### D. Remaining Jurisdictional Challenges

Because Plaintiffs have failed to demonstrate standing on any of their claims, the Court need not, and does not, address the additional jurisdictional challenges to Plaintiffs' claims.

## CONCLUSION

For the reasons set out herein, the Court **GRANTS** the motion to dismiss (D.E. 16, p. 2) and **DISMISSES** this action in its entirety pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**ORDERED** on August 17, 2023.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STEVEN HOTZE, M.D., RICHARD MABRAY, M.D., AND ALLESAN PAIGE STREETER, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action |
| v. | ) ) | No. _____ |
| THE TEXAS STATE SENATE, AUSTIN OSBORNE, in his official capacity as the Sergeant-at-Arms of the Texas Senate, and DAN PATRICK, in his official capacity as Lieutenant Governor of the State of Texas, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

**COMPLAINT**

Plaintiffs are Texas residents who seek declaratory and injunctive relief against Defendants The Texas Senate, Austin Osborne, in his official capacity as the Sergeant-at-Arms of the Texas Senate, and Dan Patrick, in his official capacity as Lieutenant Governor of the State of Texas (collectively, "Defendants"), for violation of Plaintiffs' First Amendment and additional rights under the U.S. Constitution, as follows:

**NATURE OF THE ACTION**

1.  Defendants are perpetrating an unprecedented interference with constitutional rights and representative government by gagging Texas senators and state representatives concerning the upcoming impeachment trial of Ken Paxton, after he was reelected as the Texas Attorney General by nearly 800,000 votes in November 2022.

2.      A leader in working against illegal immigration and taking courageous conservative stances on additional issues, Ken Paxton has long been fully endorsed by former president Donald Trump.

3.      President Trump recently stated, General Paxton has "done an outstanding job [as Attorney General]."[1]   President Trump further called the impeachment "illegal, unethical and profoundly unjust" and concluded the impeachment was "ELECTION INTERFERENCE."[2]

4.      Paxton recently became a target of Texas House Speaker Dade Phelan ("Phelan") and others who opposed him in the 2022 Republican primary.

5.      Just days after Texas Attorney General Ken Paxton accused Phelan of presiding over the chamber while drunk and called on him to resign, a GOP-led state House ethics panel heard testimony from investigators detailing what they described as years of misconduct by the attorney general, later recommending his impeachment unanimously.  General Paxton was not allowed to present testimony to the secret House ethics panel.

6.      Analogous to the politically motivated impeachments of President Trump, allies of Phelan and others who were not successful in defeating General Paxton in the 2022 primary or general election impeached Paxton in the House of Representatives in the last few days of the 2023 legislative session.  The most senior members of both political parties, Republican and Democrat, expressed their dismay during the abbreviated floor debate at the lack of due process and fundamental flaws in this impeachment.

---

[1] President Trump, Truth, @realDonaldTrump, May 27, 2023.
[2] *Id.*

7. Senator Ted Cruz described this impeachment process as "a travesty."[3] Because Phelan and others were not successful in defeating General Paxton in the 2022 primary or general election, it appears they have now sought to use the impeachment process to overturn the will of the voters as expressed in the 2022 election.

8. The Senate rules imposed for the upcoming impeachment trial infringe on the constitutional rights of the People of Texas, including Plaintiffs, in multiple ways. (Exhibit "A") The gag provisions violate the First Amendment by preventing Texans from timely hearing and learning the positions about this proceeding from their senators and state representatives or their agents. (Exhibits "A" and "B") These Senate rules further infringe on the First Amendment by impeding the right of Texans to petition or communicate with their senators or state representatives prior to their voting on this important matter.

9. The Senate rules also disenfranchise the entire Texas State Senate District 8, which is the one represented by Senator Angela Paxton, by prohibiting her from voting. (Exhibit "A"). Finally, the Senate rules run afoul of the Supreme Court holding in *Powell v. McCormack*, 395 U.S. 486 (1969), which prohibited Congress from refusing to seat a member elected by the People.

---

[3] Senator Ted Cruz, Twitter, @tedcruz, May 27, 2023. Senator Cruz tweeted the following: "1/x What is happening to @KenPaxtonTX is a travesty. For the last nine years, Ken has been the strongest conservative AG in the country. Bar none. No attorney general has battled the abuses of the Biden admin more ferociously-and more effectively-than has Paxton."

## THE PARTIES

10.     Plaintiff Steven Hotze, M.D. ("Dr. Hotze") is a resident of Harris County, Texas, and a citizen of the United States.  Dr. Hotze is a registered voter in Harris County, Texas.   Dr. Hotze has reached out to numerous state senators and state representatives regarding the impeachment of General Paxton and some have responded, indicating they cannot communicate with him regarding the impeachment of General Paxton due to the gag order.  (Exhibit "C"). For example, Dr. Hotze reached out to Senator Bob Hall regarding the impeachment of General Paxton and received the following text response: "Dear Dr. Hotze, I am sorry, but I am banned from speaking to you about the Paxton Impeachment situation because of Lt. Gov. Patrick's Gag Order." (Exhibit "D").  Dr. Hotze also contacted Steve Toth, a current member of The Texas House of Representatives, regarding the impeachment of General Paxton.  Representative Steve Toth responded, stating, "Hello Dr. Hotze, I am unable to speak on the record about the impeachment proceedings due to Gag Order by the Court.  I hope you can understand."  (Exhibit "E").   Most senators and representatives have not responded to Dr. Hotze efforts to communicate with them regarding the impeachment of General Paxton. (Exhibit "C"). Previously, when Dr. Hotze reaches out to senators and state representatives they promptly respond to his texts, emails or calls.   (Exhibit "C"). Additionally, Dr. Hotze voted in the 2022 Republican Primary and general election.  Dr. Hotze supports General Paxton and is opposed to his impeachment.

11.     Plaintiff Richard Mabray, M.D. ("Dr. Mabray") is a resident of Victoria County, Texas, and a citizen of the United States.  Dr. Mabray is a registered voter in Victoria County, Texas.   Dr. Mabray's state senator and state representative are not

allowed to communicate with him regarding the impeachment of General Paxton, which violates his First Amendment rights to free speech and to petition regarding grievances. Dr. Mabray supports General Paxton and is opposed to his impeachment.

12. Plaintiff Allesan Paige Streeter is a resident of Collin County, Texas, and a citizen of the United States. Ms. Paige is a registered voter in Senate District 8. Ms. Paige voted in the 2022 Republican Primary and general election. She voted for Senator Angela Paxton. By excluding Senator Paxton from the impeachment process, Ms. Paige is disenfranchised and left without representation in a matter of statewide importance-the impeachment of General Paxton.

13. Defendant The Texas Senate is recognized under the Texas Constitution, Article III, Sec. 1, stating, "Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'" The Texas Senate may be served through the Attorney General for the State of Texas, 300 W. 15th St., Austin, Texas 78701.

14. Defendant Austin Osborne ("Osborn") is the Sergeant-at-Arms for the Texas Senate. He is sued in his official capacity as Sergeant-at Arms of the Texas Senate. Osborn and the Office of the Sergeant-at-Arms are responsible for enforcing S.R. 35 and the Gag Order which are the basis for this suit. The Sergeant-at-Arms may be served through the Attorney General of the State of Texas, 300 W. 15th St., Austin, Texas 78701.

15. Defendant Dan Patrick ("Patrick") is the Lieutenant Governor and President

5

of the Senate of Texas.  He is sued in his official capacity as the Lieutenant Governor of the State of Texas.  The Lieutenant Governor presides over the impeachment trial of General Paxton and is responsible for the gag order which is the basis of this suit. (Exhibit "B").  The Lieutenant Governor may be served through the Attorney General of the State of Texas, 300 W. 15th St., Austin, Texas 78701.

## JURISDICTION AND VENUE

16.     This action arises out of federal law: Defendants' ongoing violations of the First Amendment and other provisions in the U.S. Constitution.  This action thereby raises federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

17.     Venue is proper in this United States District Court for the Southern District of Texas under 28 U.S.C. § 1391(b) & (d). The ongoing violations of constitutional rights are against all Texas residents, including Plaintiff Richard Mabray, M.D. who resides in this district.  Defendants are residents of Texas that are subject to personal jurisdiction here.

### Ongoing Injuries to Plaintiffs

18.     Defendants are immediately infringing on the constitutional rights of Plaintiffs by disenfranchising them and violating their First Amendment rights concerning a proceeding scheduled to take place in September 2023.

### Irreparable Harm and Inadequacy of Alternate Remedies

19.     Plaintiffs have First Amendment injuries to their rights of freedom of speech, for which the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Accordingly, Plaintiffs have suffered – and continue to suffer – irreparable harm.

20.     Defendants' noncompliance with the law is significantly harming the interests of Plaintiffs.  Plaintiffs, absent relief, will imminently suffer specific and substantial injuries in fact to a legally protected interest; such injuries are directly traceable to the Defendants' challenged actions herein; and a favorable judgment by this Court will likely redress such injuries.

## FACTUAL BACKGROUND

### Texas House's Secret Impeachment Proceeding

21.     On May 27, 2023, just a few months after being overwhelmingly elected to his third term, during the final hours of the legislative session a group of legislators in the Texas House impeached General Paxton.  The vote came only two days after a secret investigative committee unveiled articles of impeachment— and two days before the close of a biennial legislative session.  Following the House vote that impeached him, General Paxton said, "The ugly spectacle in the Texas House today confirmed the outrageous impeachment plot against me was never meant to be fair or just. It was a politically motivated sham from the beginning. … What we witnessed today is not just about me. It is about the corrupt establishment's eagerness to overpower the millions of Texas voters who already made their voices heard when they overwhelmingly re-elected me." [4]  The articles of impeachment were then sent to be tried in the Texas Senate.

### Texas Senate Hides its Work from Texans

22.     On May 29, 2023, the last day of the regular legislative session, the Senate passed a resolution creating a seven-member committee to draft rules for the impeachment trial of General Paxton.  The rule-making committee worked in secret for three weeks drafting the proposed rules without telling the public when and where they

---

[4] Twitter, @KenPaxtonTX, " May 27, 2023.

were meeting.  No information about the committee, its membership or anything else related to it was ever published on the official Senate website. The committee never gave public notice for its meetings, despite Senate rules requiring committees to provide 24-hour notice for meetings, even if they intend to meet privately in executive session.[5] The rules were presented to the full Senate on June 20, 2023.

23.     Following two days of closed-door debate, The Texas Senate approved the rules for the impeachment trial of General Paxton.  The Rules were approved on a vote of 25 to 3 without debate on the floor.  The process has been anything but transparent and has excluded Texans from participating and having their voices heard in a proceeding that could result in almost 30 million Texans being disenfranchised from the voting process.

### The Secret Rules

24.     On June 21, 2023, the Senate's secret rules first saw the light of day and were adopted as Senate Resolution No. 35 ("S.R. 35").  (Exhibit "A").  Prior to the Senate adopting its rules for the impeachment trial, Senator Angela Paxton indicated that she would "carry out (her) duties" as a state senator and not recuse herself

---

[5] Not only are Senate committees normally required to give prior notice of meetings, they also have to adopt their own rules and keep minutes of their meetings. The rule-making committee was established as a "special committee," but Senate rules do not exempt special committees from any rules unless the resolution forming them says so.  The resolution makes it clear the Senate can meet in executive session; however, it does not address whether they are exempt from the Senate rules regarding 24-hour notice and keeping minutes of the meeting.  The resolution gave the committee the power to meet at the call of the chair and to meet in closed sessions. Otherwise, it did not exempt the committee from any Senate rules.

ahead of General Paxton's upcoming impeachment trial.[6]  Senator Paxton further

emphasized, "As a member of the Senate, I hold these obligations sacred and I will

carry out my duties, not because it is easy, but because the Constitution demands it

and because my constituents deserve it."[7]  Senator Paxton's issued a formal

statement regarding her decision not to recuse herself, stating:

> "I have twice been elected to represent the nearly one million Texans who reside
> in Senate District 8, and it is a tremendous honor and privilege to be their voice in
> the Texas Legislature. Each time I was elected, I took an oath to uphold the
> Constitution and the laws of this great state, and Texas law compels each member
> of the Senate to attend when the Senate meets as a court of impeachment. As a
> member of the Senate, I hold these obligations sacred and I will carry out my
> duties, not because it is easy, but because the Constitution demands it and my
> constituents deserve it."[8]

Senator Paxton was right; Article 15 of the Texas Constitution demands she serve in

the court of impeachment.

### Senate Excludes Senator Paxton: S.R. 35, Rule 31

25.     Not satisfied with Senator Paxton's decision, and in an effort to

        exclude

her from the impeachment trial, the Senate included Rule 31 in S.R. 35, stating:

> "A member of the court who is the spouse of a party to the court of
> impeachment is considered to have a conflict pursuant to Article III, Section
> 22, of the Texas Constitution.  Such member of the court shall be seated in
> the court of impeachment pursuant Article 15 of the Texas Constitution.
> However, such member of the court shall not be eligible to vote on any
> matter, motion, or question, or participate in closed sessions or deliberations.

---

[6]  Statement from Senator Paxton, *Senator Angela Paxton Releases Statement Regarding Impeachment Proceedings*, Monday, June 19, 2023.
[7]  AP, *Texas lawmaker says she will 'carry out' duties in husband's impeachment trial*, June 20, 2023.
[8]  Statement from Senator Paxton, *Senator Angela Paxton Releases Statement Regarding Impeachment Proceedings*, Monday, June 19, 2023.

> Notwithstanding any other rule, a member of the court who is the spouse of a party to the court of impeachment shall be considered present and eligible only for the purpose of calculating the number of votes required for any and all matters, motions, and questions under these rules."

S.R. No. 35, Rule 31 (June 21, 2023) (Exhibit "A"). Rule 31 ignores the plain language of Article III, Section 22 which prohibits **any member** who has a **"personal or private interest"** in a "measure or bill" from voting. TEX. CONST., Art. 3, § 22.[9]

26.     Rule 31 targets one senator, Angela Paxton, and the ultimately the voters living in Senate District 8, as having a "personal or private interest" under Article III, Section 22.

27.     Because the Rules Committee improperly met in secret and have kept their process a secret, there is no way to know how the committee arrived at the conclusion that Senator Paxton had a disqualifying conflict of interest. Did any other Senator or the Lieutenant Governor disclose a "personal or private interest" or pecuniary interest as required by Article 3, Section 22?

28.     Arguably, every senator and the Lieutenant Governor have "personal or private interests" under Article 3, Section 22.

29.     Yet every other senator and the Lieutenant Governor is conspicuously absent from the language of Rule 31, thereby allowing them to fully participate in the impeachment trial.

---

[9] Article 3, Sec. 22. of the Texas Constitution states:  DISCLOSURE OF PERSONAL OR PRIVATE INTEREST IN MEASURE OR BILL; NOT TO VOTE. A member who has a personal or private interest in any measure or bill, proposed, or pending before the Legislature, shall disclose the fact to the House, of which he is a member, and shall not vote thereon.

30.     For instance, Democrat Senator Menendez has publicly demonstrated his bias and prejudice against General Paxton, including the circumstances that will be addressed at trial. On March 2023, Menendez publicly identified his prejudice against General Paxton stating: "Ken Paxton[] continues to be allowed to flaunt the laws/rules without any consequences."    (Exhibit "F"). Within the last year, Menendez has made public statements accusing General Paxton of bribery and wrongdoing, including one against Paxton's reelection by urging the public to "elect an AG that's NOT under indictment, FBI investigation or accused of bribery by his own staff!"   (Exhibit "F") Plainly, Senator Menendez has a bias towards seeing General Paxton convicted.   Despite these public comments demonstrating Senator Menendez's very one-sided position last year – which Texas voters rejected by reelecting Paxton in a landslide – Senator Menendez is not excluded by the Senate Rules.

31.     During a nationally televised interview, Democrat Senator Gutierrez concluded that he's "seen an abundance of misdeeds here."[10] He further stated, "What we cannot turn away from is he is currently under indictment out of Collin County…he is under investigation from the FBI from some of the things that arose in this impeachment…" and the evidence seen by the House "could not be refuted." *Id.* Despite these statements, Senator Gutierrez is not included in Rule 31.

32.     Senator Charles Schwertner (R-Georgetown) endorsed George P. Bush in the Republican Primary against General Paxton.  By endorsing General Paxton's primary

---

[10] See https://www.youtube.com/watch?v_D5EkDv29Jvw.

opponent, Senator Schwertner has a "personal or private interest" in seeing that General Paxton is removed from office. Yet Senator Schwertner is not excluded under Rule 31.

33.    Senator Mayes Middleton (R-Galveston) invested in former State Rep. Matt Krause's campaign and later Louie Gohmert's campaign in the primary against General Paxton. Both candidates made statements expressing concern about Ken Paxton's legal troubles but Gohmert was particularly critical, raising the prospect that Paxton might be indicted before the election and a Democrat would take the position by default. Gohmert's website read: "Texas needs an attorney general whose top attorneys working for him have not found it necessary to send a letter to the FBI urging an investigation into the corruption of their boss." If we assume that Senator Middleton was so concerned about Ken Paxton's legal troubles that he would contribute large sums into his challengers' campaigns, he has a personal, private, and pecuniary interest in seeing a return on his investment even if he reaches his goal in a different manner. Like Senator Menendez, Senator Gutierrez, Senator Schwertner, and Senator Middleton are not excluded by Rule 31.

34.    Additionally, all the Senate Democrats have worked for years to defeat General Paxton; however, none of them is excluded in Rule 31. Article 3, Section 22 is much broader than the marital relationship identified in Rule 31, and if applied equally would probably result in every senator and the Lieutenant Governor being excluded from the impeachment trial.

35.    As shown below, Article 3, Section 22 is not properly applicable to an Article 15 impeachment proceeding.

**Lieutenant Governor and Senators Refuse to Speak with or Hear from Their Constituents: S.R. 35, Rule 10 and Gag Order**

36.     As part of the impeachment Rules, the Senate prohibits senators from interacting with their constituents, effectively silencing the voice of all Texans in this historic process.[11]  Specifically, Rule 10 states:

> "**Gag Order**. (a) A Gag Order that meets state and federal law standards shall be issued by the presiding officer of the court as soon as practicable after adoption of the rules for the court of impeachment.
>
>  (b)  **Communication Rules**. No members of the court, staff of members of the court, presiding officer of the court, and legal counsel of the presiding officer **shall discuss or comment on any matter relating to the merits of the proceedings before the court of impeachment with Warren Kenneth Paxton, Jr.**, and his counsel, the House Board of Managers and their counsel, **or any persons** other than members of the court, the presiding officer of the court, legal counsel to the presiding officer, or staff or legal counsel to members of the court."

37.     On July 17, 2023, Lieutenant Governor Patrick issued a broad Gag Order related to the impeachment trial of General Paxton stating "out-of-court statements" by both sides could jeopardize the trial in the Texas Senate.[12]  Violators of the Gag Order can be found in contempt of court and punished with up to six months in a county jail and a fine of up to $500.  (Exhibit "B").  Among other things, the order prohibits parties — including members of the Senate and House and their staffs, witnesses and attorneys —

---

[11]  In general, impeachments are a rare occurrence. In Texas, three officials have been impeached and two were removed from office after impeachment—Governor James Ferguson (D) in 1917 and State District Judge O.P. Carillo in 1975. Ferguson was indicted on charges including embezzlement while Carillo spent three years in jail following his impeachment. *Baylor University*, "O.P. Carrilo," accessed November 4, 2013.  Specifically, Judge Carillo was impeached and removed in 1976 for "schem[ing] to take Duval County taxpayers' money through phony equipment rentals." *Daily Texas Online*, "The Daily Texan editorial board's endorsements for the Tuesday, Nov. 5 election," November 3, 2013.

[12] Robert Downen, *Acting as Paxton impeachment judge, Lt. Gov. Dan Patrick issues sweeping Gag Order*, Texas Tribune, July 17, 2023.

from making statements that they "reasonably should know" will have a "substantial likelihood of materially prejudicing the trial." (Exhibit "B").

38.     Rule 10 and the Gag Order (Exhibit "B") prohibits, among other things, the senators and state representatives from communicating with their constituents on a matter of statewide importance, silencing the voice of the people. Rule 10 and the Gag Order trample on the constitutional rights of Plaintiffs and all Texans.

## COUNT I
### (Against Defendants for Violation of the First Amendment Freedom of Speech)

39.     Plaintiffs incorporate herein all statements and allegations contained in this Complaint.

40.     The Texas senators and state representatives are state actors fully subject to the First Amendment of the U.S. Constitution.

41.     The Gag Order in the Senate rules infringes on the First Amendment right of Plaintiffs to hear the impressions, positions, and views of Texas senators and state representatives in connection with the impeachment trial.

42.     The Gag Order in the Senate rules infringes on the First Amendment right of Plaintiffs to communicate with Texas senators and state representatives in connection with the impeachment trial.

43.     Rule 10 and the Gag Order prohibits, among other things, the senators and state representatives from communicating with their constituents on a matter of statewide importance, silencing the voice of the people.

44.     If senators and state representatives are "gagged" from speaking to their constituents, then so too are their constituents "gagged" from speaking to their senators and state representatives.

45.     Defendants' foregoing conduct infringes on Plaintiffs' First Amendment right to speak and hear, and has a further chilling effect on their protected First Amendment rights.

## COUNT II
**(Against Defendants for Violation of the First Amendment Right to Petition)**

46.     Plaintiff incorporates herein all statements and allegations contained in this Complaint.

47.     The Texas senators and state representatives are state actors fully subject to

the First Amendment of the U.S. Constitution.

48.     The Gag Order in the Senate rules and Rule 10 infringes on the First Amendment right of Plaintiffs to petition their Texas senators and state representatives in connection with the impeachment trial of General Paxton.

## COUNT III
**(Against Defendants for Violation of the "One Person One Vote" Requirement of the U.S. Constitution)**

49.     Plaintiffs incorporate herein all statements and allegations contained in this Complaint.

50.     The Texas Senate Rules violate the well-established principle of "one person one vote" that is repeatedly required by the U.S. Supreme Court and the Fifth Circuit.

51.     "In a nutshell, the 'one man one vote' rule means that 'each person's vote counts as much, insofar as it is practicable, as any other person's.'" *Voter Info. Project, Inc. v. Baton Rouge*, 612 F.2d 208, 210 (5th Cir. 1980) (quoting *Hadley v. Junior College District*, 397 U.S. 50, 54 (1969)).

52.     This fundamental principle was described in a Fifth Circuit concurrence as the "revolutionary one person, one vote line of cases." *Thomas v. Reeves*, 961 F.3d 800,

16

808 (5th Cir. 2020) (Costa, Owen, Davis, Stewart, Dennis, and Higginson, JJ.,
concurring with an en banc ruling) (citing *Reynolds v. Sims*, 377 U.S. 533 (1964)).

53.    "The idea that one group can be granted greater voting strength than
another is hostile to the one man, one vote basis of our representative
government." *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969).

54.    The Senate Rules directly violate this fundamental constitutional principle
by fully disenfranchising all of the voters in the district of Senator Angela Paxton, and
simultaneously alter the relative representation of every other voter in Texas.

55.    Senate Rules thereby violate the Equal Protection Clause of the Fourteenth
Amendment of the U.S. Constitution, and the requirement of "one person, one vote."

56.    Article 15, section 2 of the Texas Constitution states: "TRIAL OF
IMPEACHMENT OF CERTAIN OFFICERS BY SENATE. Impeachment of
the…Attorney General…shall be tried by the Senate." The inclusion of the word "shall"
requires Senator Paxton to fully participate in the impeachment trial, including
deliberations relating to the ultimate outcome.

57.    Article 15 is limited to impeachment proceedings and is the only article in
the Texas Constitution addressing the impeachment and trial of an attorney general. In its
Rules for the impeachment trial, the Senate goes outside Article 15 to exclude Senator
Paxton and her constituents from the impeachment trial. To achieve the goal of
excluding Senator Paxton, Senate Rule 31 cites Article 3, Section 22, stating:

> **Conflict.** A member of the court who is the spouse of a party to the court of
> impeachment is considered to have a conflict pursuant to Article III, Section 22,
> of the Texas Constitution. Such member of the court shall be seated in the court of
> impeachment pursuant to Article 15 of the Texas Constitution. However, such
> member of the court **shall not be eligible to vote on any matter, motion, or
> question, or participate in closed sessions or deliberations.**

S.R. Rule 35, (June 21, 2023) (Exhibit "A").

58.    Conspicuously absent from Article 15 is any language that allows the Senate to exclude one of its members from "vot[ing] on any matter, motion or question, or participating in closed sessions or deliberations."  The personal or private interests language identified in Article 3, Section 22 are not found in Article 15.  Rule 31 fails to recognize that Article III, Section 22 is much broader than the husband and wife relationship and if accurately applied would likely result in every senator and the Lieutenant Governor being excluded from the impeachment trial.

59.    Specifically, Article 3, Section 22 states:

Sec. 22. DISCLOSURE OF PERSONAL OR PRIVATE INTEREST IN MEASURE OR BILL; NOT TO VOTE.  A member who has a personal or private interest in any measure or bill, proposed, or pending before the Legislature, shall disclose the fact to the House, of which he is a member, and shall not vote thereon.

60.    Here, arguably every Senator and the Lieutenant Governor have a conflict of interest with respect to the impeachment proceeding.

61.    The language found in Article 3, Section 22 is conspicuously absent from Article 15.  Unlike Article 15, Article III does not address impeachment.  In fact, the word impeachment is nowhere to be found in Article 3.

62.    The Texas Supreme  Court has made it clear that Article 3, section 22 is not applicable to an Article 15 proceeding.

63.    In the matter of impeachment the House acts somewhat in the capacity of a grand jury.  It investigates, hears witnesses, and determines whether or not there is sufficient ground to justify the presentment of charges, and if so, it adopts appropriate articles and prefers them before the Senate.

64.     In doing these things, the House is not "legislating", nor is it conducting an investigation in order that it may be in better position to legislate.  It is investigating facts in order that it may determine whether one of the people's servants has done an official wrong worthy of impeachment under the principles and practices obtaining in such cases, and, if so, to present the matter for trial before the constituted tribunal.  All of this is judicial in character.

65.     The same is true of the Senate, except its powers are so clearly judicial as to make argument on the point almost superfluous.  "Impeachment", says the Texas Constitution, shall be "tried" by the Senate. During the trial the Senate sits "as a court of impeachment," and at its conclusion renders a "judgment".  A body authorized to sit as a "court" to "try" charges preferred before it, that is to hear the evidence and declare the law and to render "judgment", possesses judicial power, and in its exercise acts as a court.  The Senate sitting in an impeachment trial is just as truly a court as is this court.  The Senate's jurisdiction is very limited, but such as it has is of the highest.  It is original, exclusive and final.  Within the scope of its constitutional authority, no one may gainsay its judgment.

66.     "The courts, in proper cases, may always inquire whether any department of the government has acted outside of and beyond its constitutional authority." *Ferguson v. Maddox*, 114 Tex. 85, 100 (Tex. 1924).  The acts of the Senate, sitting as a court of impeachment, are not exempt from this judicial power…." *Id.*  The Senate is bound by the United States Constitution. *Id.*

67.     However, Article 15 includes a provision to ensure an "[i]mpartial trial by [the] Senate." TEX. CONST,  art.  15, § 3.  To ensure that "personal or private interest"

are not an issue.  Specifically, "When the Senate is sitting as a Court of Impeachment, **the Senators shall be on oath, or affirmation of impartiality to try the party impeached**, and no person shall be convicted without the concurrence of two-thirds of the Senators present."  TEX. CONST. art. 15, § 3.  Through the oath, or affirmation of impartiality, Article 15, § 3 addresses personal or private interest, including the relationship between General Paxton and Senator Paxton.

68.     Every Senator presiding over General Paxton's impeachment trial has a bias or partiality for or against General Paxton.  Party affiliation alone raises partiality concerns.  The Democrats in the Senate have worked to defeat General Paxton for years and some of the Republican Senators have supported General Paxton.  Identifying all the "private or personal" interests among senators, the Lieutenant Governor, and General Paxton would consume hundreds of pages.

69.     Despite the fact that every Senator and the Lieutenant Governor arguably have a conflict "personal or private" interest in the impeachment proceeding and/or biases for or against General Paxton, Rule 31 targets one individual, Senator Angela Paxton, and the voters who live in Senate District 8.   Again, Rule 31 expressly prohibits Senator Angela Paxton from voting on any matter, motion, or question, or participating in closed sessions or deliberations.  Effectively, the Rule makes Senator Paxton a bystander in the court of impeachment and leaves Senate District 8 without representation; thus violating the "one person one vote" requirement of the Constitution.

70.     The Senate Rules do not have any provisions addressing or prohibiting many conflicts of interests, such as prohibiting votes by senators who accept or seek political campaign donations by opponents of Ken Paxton.  Senators having conflicts of

interests, including even potentially receiving monetary incentives, are fully allowed to vote in the impeachment trial except for Senator Angela Paxton.

71.     The Senate Rules do not provide for a substitute for Senator Angela Paxton to represent her district in the impeachment vote to represent her district in the impeachment trial vote.

72.      The Texas Constitution does not require or even encourage any impartiality in the vote on impeachment, which is a quintessentially political vote unlike a jury trial. Article III, Section 22 of the Texas Constitution concerning conflicts does not by its terms apply to a vote at an impeachment trial.

73.     Plaintiffs fully assert their rights under 42 U.S.C. § 1983 against Defendants based on their adopting and enforcing the unconstitutional Senate Rule 31 with respect to the impeachment trial of Ken Paxton.

74.     Senate Rule 31 must be fully enjoined based on its violation of the requirement of "one person one vote," under the Fourteenth Amendment to the U.S. Constitution and corresponding precedents established by the U.S. Supreme Court.

75.     Plaintiffs have standing as voters for offices in the Texas Senate and seek full relief, including an injunction against the Senate Rules and recovery of attorneys' fees as provided by 42 U.S.C. §§ 1983 and 1988 for any and every claim asserted herein.

**EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**

76.     Plaintiffs incorporate the foregoing paragraphs and incorporate them here as if fully set forth herein.

77.     Plaintiffs seek a temporary restraining order preventing Defendants from implementing and enforcing SR 35 Rule 10 and Rule 31 (Exhibit "A") and the

21

accompanying Gag Order (Exhibit "B"). A temporary restraining order serves to provide emergency relief and preserve the status quo until a hearing may be had on a preliminary injunction.

78.     Without immediate relief, Plaintiffs will suffer imminent and irreparable harm. With each day that passes, Plaintiffs are deprived of their liberty and rights under the United States Constitution in that they not allowed to communicate with their duly elected representatives in the state senate or state house regarding an issue of immense statewide importance.

## GROUNDS FOR A PRELIMINARY INJUNCTION

79.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

80.     Plaintiffs request this Court to set their Motion for a Preliminary Injunction for a hearing and, after the hearing, issue a preliminary injunction against Defendants.

81.     Additionally, Plaintiffs further request that, following a trial on the merits of this case, the Court enter a permanent injunction against Defendants.

## PRAYER FOR RELIEF

82.     Plaintiffs demand the following relief:

a.   a declaration that Senate Resolution 35, Rules 10 and 31 and the companion Gag Order violate the First and Fourteenth Amendments to the United States Constitution, and are invalid;

b.   a temporary restraining order, preliminary and permanent injunction that suspends the enforcement of Senate Resolution 35, Rules 10 and 31 and the companion Gag Order;

c.   an award of nominal and compensatory damages;

d.   an award of costs and attorneys' fees, pursuant to 42 U.S.C. §§ 1983 and

1988; and

e.   all other relief that the Court may deem just, proper, or equitable.


Respectfully submitted,

**WOODFILL LAW FIRM, PC**

 */s/ Jared R. Woodfill*
Jared R. Woodfill
State Bar No. 00788715
Federal Bar No. 17069
3 Riverway, Suite 750
Houston, Texas 77056
Tel: (713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com (service)
jwoodfill@woodfilllaw.com (non-service)


Dated:  August 3, 2023

By: Birdwell                                    S.R. No. 35

SENATE RESOLUTION

BE IT RESOLVED by the Senate of the State of Texas, That the
following Rules of Impeachment govern in the Impeachment Trial of
Warren Kenneth Paxton Jr., Attorney General of the State of
Texas:

Rule 1.

**Court of Impeachment.**  At 9:00 a.m., on September 5, 2023, or at
the discretion of the presiding officer of the Senate, the Senate
of the State of Texas shall meet to receive the appearance or plea
and commence the trial of Warren Kenneth Paxton, Jr., Attorney
General of the State of Texas, against whom articles of
impeachment have been preferred by the House of Representatives
of the State of Texas.

Rule 2.

**Court and Court Officers.**  The Senate of the State of Texas sits as
the court of impeachment.  The members of the Senate serve as the
members of the court.  The President of the Senate, or a member of
the Senate designated by the President, serves as the presiding
officer of the court.  In addition, the President of the Senate
may appoint a jurist who shall not run for election in the 2024
election cycle to serve as the presiding officer of the court.
The Sergeant at Arms of the Senate serves as bailiff of the court.

2023S0455-1  06/21/23            1

**EXHIBIT A**

S.R. No. 35

The Secretary of the Senate serves as clerk of the court.  The President of the Senate may appoint additional officers of the court as he deems necessary.

Rule 3.

**Parties and Appearance.**  Warren Kenneth Paxton, Jr., and the House Board of Managers are the parties to the trial of impeachment. The parties and their counsel shall be admitted to appear and be heard on the impeachment.  The parties and their counsel have access to the floor of the Senate at all times and are to be provided seats on the floor of the Senate, except when the court of impeachment is in closed session.  The appearance of the parties and their counsel is to be indicated in the record of the proceedings for each session of the impeachment trial.  The bailiff shall maintain a daily register of all persons admitted to the floor of the Senate, except for members of the court, officers of the court, the presiding officer, legal counsel for the presiding officer, and staff of members of the court.

Rule 4.

**Proceeding Records.**

(a) The clerk of the court shall ensure that the court has the court reporters necessary to transcribe the court's proceedings. The parties may also have their own court reporter to transcribe the proceedings, at their own expense.

(b) A copy of all written documents submitted into evidence

S.R. No. 35

during the impeachment trial shall be shared with members of the court.

Rule 5.

(a) **Commencement of the Trial.** The Senate, having resolved itself into a court of impeachment, shall proceed to the consideration of Articles I, II, III, IV, V, VI, VII, VIII, IX, X, XV, XVI, XVII, XVIII, XIX, and XX. Articles XI, XII, XIII, and XIV shall be held in abeyance. The clerk of the court shall read the articles of impeachment and the presiding officer shall ask Warren Kenneth Paxton, Jr., or his counsel, how he plead on each article. Warren Kenneth Paxton, Jr., shall in-person or by counsel appear in the court and plead guilty or not guilty to the articles of impeachment preferred against him. The plead shall be recorded with the clerk of the court of impeachment. If Warren Kenneth Paxton, Jr., fails to appear in-person or by counsel, or in appearing, fails to plead to the articles of impeachment, the trial shall proceed as on a plea of not guilty.

(b) **Action on Pleadings.** Any motion, that if wholly or partially granted, would result in dismissal of any article or articles of impeachment shall be submitted to a vote of the majority of the members present and eligible to serve as jurors without debate or comment, after members of the court consider all written motions and answers by the parties and the report of recommendations prepared by the Senate Special Committee on Rules & Procedures for Court of Impeachment.

S.R. No. 35

All other pre-trial motions shall be ruled on by the presiding officer of the court considering all written motions and answers by the parties and the report of recommendations prepared by the Senate Special Committee on Rules & Procedures for Court of Impeachment previously submitted under Rule 15, without debate or comment. The presiding officer of the court shall rule on each such motion, or at his or her option, shall submit the question to a vote of the majority of the members present and eligible to serve as jurors.

(c) **Order of Proceeding and Trial.** The trial shall begin promptly after rulings and votes on all pre-trial motions. Time limitations as provided in Rule 17 shall be monitored by the clerk of the court during all the proceedings of the court. The House Board of Managers may provide an opening statement. Warren Kenneth Paxton, Jr., or his counsel may make an opening statement afterwards or reserve the right to make an opening statement at the beginning of his case. The House Board of Managers or their counsel may then begin the presentation of evidence. Cross-examination of witnesses is permitted. Upon conclusion of the evidence on the part of the House Board of Managers or their counsel, Warren Kenneth Paxton, Jr., or his counsel may make an opening statement if they have not already done so. Warren Kenneth Paxton, Jr., or his counsel may begin the presentation of evidence. Cross-examination is permitted. Rebuttal evidence may be presented by both parties. Upon the completion of all evidence, closing arguments shall be heard. The House Board of

S.R. No. 35

Managers having the burden of proof, has a right to open and close the final arguments. Following final arguments, members of the court shall begin deliberation.

(d) **Examination of Witnesses.** All witnesses and evidence shall be examined only by the House Board of Managers or counsel to the parties.

(e) **Witness Lists.** A list of all witnesses, if any, who are to be called to testify in their case in chief at trial by a party, including the status of their subpoenas, are to be filed with the clerk of the court by August 22, 2023, or a date set by the presiding officer of the Senate. Copies of such lists shall be provided to the opposing party, members of the court, the presiding officer of the court, and legal counsel of the presiding officer of the court but are otherwise confidential.

Rule 6.

**Authority of the Court.** The presiding officer of the court has the power to compel the attendance of witnesses, to enforce obedience to its orders, mandates, writs, process, and judgments, to preserve order, and to punish for contempt to the same extent as district courts in the State of Texas or as provided in Section III, Article 15, of the Texas Constitution, and to make all lawful orders, rules and regulations which it may deem essential or conducive to the ends of justice. The bailiff, under the direction of the presiding officer thereof, may employ licensed Texas peace officers to aid and assist as may be necessary to

S.R. No. 35

enforce, execute, and carry into effect the lawful orders, mandates, writs, and process sitting as a court of impeachment. All effort shall be taken to ensure the timely production of subpoenaed writings or other items.  All subpoenas issued requesting documents, writings, or other items shall be responded to within seven days of receipt of service.

Rule 7.

**Suspension or Amendment of the Rules.** These rules of impeachment govern during the trial of this impeachment proceeding. The rules may be suspended on the vote of two-thirds of the members of the court present and eligible to serve as jurors, the yeas and nays of the vote entered in the record.  The rules may be amended on the vote of two-thirds of the members of the court present and eligible to serve as jurors, the yeas and nays of the vote entered in the record, after written notice of the proposed amendment has been given in the open court for a period of at least twenty-four hours.

Rule 8.

**Closed Court Deliberation.** The sessions of the court of impeachment are to be open. Deliberations of the court are to be closed. The court may meet in closed session, but no formal action may be taken in a closed session. Deliberations may not occur until conclusion of all final arguments. Only members of the court are permitted in deliberations. Any vote shall be in open court without debate or comment. After final judgment, a

S.R. No. 35

member of the court may provide a written statement on their vote within seventy-two hours to the clerk of the court which would become a part of the official record and entered into the journal.

Rule 9.

(a) **News Media.** In order for the public to be properly informed, representatives of the news media are to be provided space in the Senate gallery and are to be allowed to cover the proceedings of the Senate of the State of Texas sitting as a court of impeachment when the court is in open session. Interviews, press conferences, and other contacts between representatives of the news media and members of the court, officers of the court, members of the House of Representatives, counsel, witnesses, or parties may not be conducted in the Senate Chamber, the Lt. Governor's reception room, the member's lounge, the back hall of the Senate Chamber, and the corridors and rooms within the prescribed area while the court is in session. Two stationary pool cameras shall be allowed in the Senate Chamber to ensure clear visual and audio availability to the news media.

(b) **Public Access.** The bailiff shall organize a method by which as many members of the public as possible have access to the Senate gallery while the court is in open session by rotating members of the public through the gallery seats in an orderly fashion at certain time intervals. To ensure remote public access, the court shall livestream the court proceedings, except

S.R. No. 35

when the court is in a closed session.

Rule 10.

(a) **Gag Order.** A gag order that meets state and federal law standards shall be issued by the presiding officer of the court as soon as practicable after adoption of the rules for the court of impeachment.

(b) **Communication Rules.** No members of the court, staff of members of the court, presiding officer of the court, and legal counsel of the presiding officer shall discuss or comment on any matter relating to the merits of the proceedings before the court of impeachment with Warren Kenneth Paxton, Jr., and his counsel, the House Board of Managers and their counsel, or any persons other than members of the court, the presiding officer of the court, legal counsel to the presiding officer, or staff or legal counsel to members of the court.

(c) **Advocating a Position.** No member of the court or the presiding officer of the court shall advocate a position on the merits of the proceedings to other members of the court or the presiding officer of the court, until such time as deliberations shall begin.

Rule 11.

**Call of the Senate and Privileges of the Senate Floor.**

(a) The court shall proceed as a court of impeachment as though

S.R. No. 35

under a call of the Senate. While the court is in session, all members of the court shall be in attendance in accordance with the Texas Constitution and Section 665.026 of the Texas Government Code.

(b) All members of the House Board of Managers shall be in attendance on the Senate floor when the court of impeachment is in open session.

(c) Members of the court, and their staff and legal counsel, and members of the House Board of Managers may not utilize a wireless mobile device while the court of impeachment is in session on the Senate floor unless necessary for hearing assistance or accessing electronic documents submitted into evidence.

(d) Each member of the court is entitled to one staff member on the Senate floor outside of the rail while the court is in open session. The presiding officer may have legal counsel on the Senate floor while the court is in open session.

(e) Members of the court are allowed legal materials, court transcripts and documents, and personal materials on the Senate floor at their desk. Members of the court, and their staff and legal counsel, and members of the House Board of Managers may utilize electronic equipment on the Senate floor while the court of impeachment is in session that does not have wireless communication capabilities or where those wireless communication capabilities are disabled. Members of the court may access electronic documents submitted into evidence utilizing any

electronic device. Members of the court may keep a drinking container with water on the Senate floor at their desk while the court is in session.

(f) Members of the court may take brief personal breaks to the member's lounge, where the proceedings will be broadcasted, while the court is in session.

(g) As necessary when a witness is not testifying, members of the court may move about the Senate floor while the court is in open session to confer with staff and legal counsel, the presiding officer, legal counsel to the presiding officer, or other members of the court while maintaining strict decorum.

(h) Former members of the Texas Senate, members of the House of Representatives that are not members of the House Board of Managers, family privileges, and other guest floor privileges are suspended during the proceedings of the court of impeachment.

Rule 12.

**New Articles of Impeachment.** The House of Representatives shall not present to the Senate of the State of Texas any additional articles of impeachment to those already presented prior to thirty days within the commencement of the court of impeachment trial. Any additional articles of impeachment to those already presented brought within thirty days of commencement of the court of impeachment trial shall be held in abeyance. If any additional articles of impeachment to those already presented are received

S.R. No. 35

by the Senate of the State of Texas in compliance with Rule 12, no additional time shall be granted to the parties in accordance with the time limitations stated in Rule 17.

Rule 13.

**Authority and Duties of the Presiding Officer.**

(a) The presiding officer of the court shall have power to make and to issue, by himself or herself or by the clerk of the court, all orders, mandates, writs, and process authorized by these rules or by the court, and to make and to enforce such regulations and orders in the Senate as the court may authorize or provide.

(b) All questions of evidence, including questions of relevancy, materiality, or repetition of evidence, and all incidental questions, shall be decided observing the established Texas Rules of Evidence as nearly as applicable, as deemed necessary to promote a timely and fair resolution of the articles of impeachment. The presiding officer of the court shall rule on each question, or at his or her option, shall submit the question to a vote of the majority of the members present and eligible to serve as jurors without debate or comment.

Rule 14.

(a) **Legal Counsel for the Presiding Officer.** In addition to legal staff currently employed by the presiding officer of the Senate, the presiding officer may select legal counsel licensed in the State of Texas who is not a registered lobbyist in this State.

S.R. No. 35

Legal counsel for the presiding officer may consult on matters related to all rulings, orders, mandates, writs, questions of evidence, and processes authorized by the rules of the court of impeachment. The legal counsel selected must be knowledgeable about the Texas Rules of Evidence.

(b) **Legal Counsel for the Members of the Court.** In addition to legal staff currently employed by members of the court, the Texas Senate Caucus may select legal counsel licensed in the State of Texas who is not a registered lobbyist in this State.

Rule 15.

**Motions of the Parties.**

(a) All pre-trial motions made by the parties, or their counsel, other than those referred to in Rule 13(b), are to be submitted in writing to the clerk of the court and addressed to the presiding officer no later than August 5, 2023. All answers shall be filed by the opposing party no later than August 15, 2023. The clerk of the court shall prepare copies of all motions and answers and distribute to members of the court by August 16, 2023. The Senate Special Committee on Rules & Procedures for Court of Impeachment shall review all pre-trial motions and answers and shall prepare a report with recommendations for each motion no later than August 28, 2023. The Senate Special Committee on Rules & Procedures for Court of Impeachment shall provide written copies of the report to members of the court by August 29, 2023. The reports of the Senate Special Committee on Rules & Procedures for

S.R. No. 35

Court of Impeachment are otherwise confidential.

(b) Except for motions that if granted could result in the dismissal of any article or articles of impeachment, the rulings shall be made by the presiding officer of the Senate sitting as the presiding officer of the court of impeachment at the commencement of the trial prior to opening statements. The presiding officer may, at his or her option, submit the question on any motion to a vote of the majority of members of the court present and eligible to serve as jurors without debate or comment. If the granting of a motion could result in the dismissal of any article or articles of impeachment, it shall be submitted prior to the beginning of an opening statement to a vote of the majority of the members present and eligible to serve as jurors without debate or comment, after members of the court consider all written motions and answers by the parties and the report of recommendations prepared by the Senate Special Committee on Rules & Procedures for Court of Impeachment.

(c) If necessary, the presiding officer may defer the ruling on a motion until the conclusion of all evidence, if it is deemed any evidence is necessary for a ruling on the motion. If the motion is deferred, the presiding officer of the Senate, sitting as the presiding officer of the court, shall rule on the motion at the conclusion of all evidence, or at his option, after the conclusion of all evidence, submit the question to a vote of a majority of the members of the court present and eligible to serve as jurors without debate or comment. If the granting of a

S.R. No. 35

motion could result in the dismissal of any article or articles of impeachment, it shall be submitted to a vote of the majority of the members present and eligible to serve as jurors without debate or comment, after members of the court consider all written motions and answers by the parties and the report of recommendations prepared by the Senate Special Committee on Rules & Procedures for Court of Impeachment. A majority of the members of the court present and eligible to serve as jurors may defer the ruling on a motion until the conclusion of all evidence, if it is deemed any evidence is necessary for a ruling on the motion.

(d) All other motions that may be filed during the course of the trial, other than those referred to in Rule 13(b) shall be filed in writing and presented to the presiding officer of the court. The presiding officer of the court shall rule on each question, or at his or her option, shall submit the question to a vote of the majority of the members present and eligible to serve as jurors without debate or comment. If the granting of a motion could result in the dismissal of any article or articles of impeachment, it shall be submitted to a vote of the majority of the members present and eligible to serve as jurors without debate or comment, after members of the court consider all written motions and answers by the parties and the report of recommendations prepared by the Senate Special Committee on Rules & Procedures for Court of Impeachment.

(e) The above dates in Rule 15 are subject to change at the

S.R. No. 35

discretion of the presiding officer of the Senate, if the start date of the trial is amended.

(f) All motions and answers shall be submitted to the clerk of the court and must be created in 12-point, Times New Roman font, double-spaced, and on letter size paper. All motions and answers submitted must maintain a minimum one-inch margin on all sides. All motions and answers submitted shall not exceed ten pages in length.

Rule 16.

**Decisions of Court.** Except as provided otherwise in these rules, all questions to the court are to be decided on the vote of a majority of the members present and eligible to serve as jurors without debate or comment.

Rule 17.

**Time Limitations.** It is the intent of the Senate of the State of Texas to conduct a fair and respectful trial. The Senate will not tolerate unnecessary delays, outbursts, or side-bar remarks. The decorum rules of the Senate Chamber will be respected at all times. Prolonged, repetitive, or unnecessary questioning or posturing will not be allowed. The presiding officer will strictly and routinely enforce Rule 611 in the Texas Rules of Evidence. The presiding officer shall exercise reasonable control over the time, mode, and order of the examination of witnesses and the presentation of evidence so as to:

S.R. No. 35

    (1) make those procedures effective for determining the truth;

    (2) avoid wasting time; and

    (3) protect witnesses from harassment or undue embarrassment.

To that end, the following time limits and rules are to be in effect for the court of impeachment, subject to extension by the presiding officer of the court in the interest of justice:

    (1) Opening statements: 60 minutes per side;

    (2) Total hours for presentation of evidence: 24 hours for each party;

    (3) Cross-examination of witnesses shall be closely monitored for violations of Rule 611 in the Texas Rules of Evidence;

    (4) Only one person per side can question a witness and only one person per side may cross-examine a witness;

    (5) Rebuttal evidence: 60 minutes per side;

    (6) Final argument: 60 minutes per side; and

    (7) If there is a conviction: 15 minutes per side on the issue of disqualification to hold future office.

Rule 18.

S.R. No. 35

**Preparations and Proceedings.** The presiding officer of the Senate shall direct all necessary preparations in the Senate Chamber, and the presiding officer of the court, shall direct all forms of proceedings, and all forms during the trial of impeachment not otherwise provided for.

Rule 19.

**Administration of Oaths.**

(a) The following oath is to be administered by the chief justice of the Supreme Court of Texas or the presiding judge of the Criminal Court of Appeals of Texas to the presiding officer of the court:

*"I do solemnly swear or affirm that I will impartially try Warren Kenneth Paxton, Jr., Attorney General of Texas, upon the impeachment charges submitted by the House of Representatives, so help me God."*

(b) The following oath is to be administered by the presiding officer of the court to each member of the Senate that is eligible to serve as a juror of the court:

*"I do solemnly swear or affirm that I will impartially try Warren Kenneth Paxton, Jr., Attorney General of Texas, upon the impeachment charges submitted to me by the House of Representatives and a true verdict render according to the law, and the evidence, so help me God."*

S.R. No. 35

(c) The following oath is to be administered by the presiding officer, or the clerk of the court at the direction of the presiding officer, to each person employed by the court to interpret or translate for a witness appearing in the impeachment proceedings:

*"I do solemnly swear or affirm that I will correctly interpret and translate for proceedings on the trial of Warren Kenneth Paxton, Jr., on impeachment, so help me God."*

(d) The following oath is to be administered by the presiding officer, or the clerk of the court at the direction of the presiding officer, to each person employed by the court to transcribe or report the impeachment proceedings:

*"I do solemnly swear or affirm that I will correctly transcribe and report all of the proceedings on the trial of Warren Kenneth Paxton, Jr., on impeachment, so help me God."*

Rule 20.

**Votes.**

(a) No member of the court that is eligible to serve as a juror may vote or have a vote recorded on any question unless present on the Senate floor at the time such vote is taken. No member may be paired or vote by proxy. All votes by members of the court shall be a yea or nay.

(b) For any motion, that if wholly or partially granted, would result in dismissal of any article or articles of impeachment,

the votes shall be taken in the following manner: Each member of the court shall be provided a voting form and shall submit a written vote on the motion to the clerk of the court to be entered in the record. Immediately after collection of the written votes by the bailiff, the clerk of the court shall randomly select one written ballot at a time and call the member of the court's name and the vote that the member of the court recorded. At the conclusion of reading all members of the court's votes, the clerk of the court shall announce the vote tally and then the presiding officer shall poll the members of the court. As each member of the court's name is called by the presiding officer, he or she shall rise in his or her place and answer yea or nay.

Rule 21.

**Witnesses.**

(a) Each person appearing as a witness in the impeachment proceeding shall be administered an oath. The presiding officer of the court shall administer the following oath:

*"I do solemnly swear or affirm that the evidence I give upon this hearing by the Senate of Texas of impeachment charges against Warren Kenneth Paxton, Jr., shall be the truth, the whole truth, and nothing but the truth, so help me God."*

(b) Witnesses may be examined by only one person on behalf of the party calling them and cross-examined by only one person on behalf of the other party.

S.R. No. 35

(c) For purposes of this court of impeachment, witness depositions shall not be taken by either party of any potential witness. Evidence in the form of a deposition is not admissible, unless the deposition was taken in a prior proceeding, is authenticated, and is used solely for impeachment purposes under Rule 613 of the Texas Rules of Evidence.

(d) No member of the court or the presiding officer of the court may be called or volunteer as a witness unless the evidence to be elicited is relevant, material, compelling, and not otherwise provable. A party seeking to call a member of the court or the presiding officer as a witness must provide notice as required under Rule 5(e) unless the testimony is requested during the rebuttal period, but in any event must prepare a written proffer of evidence and testimony to be elicited. Such written proffer must explain why the evidence is not otherwise provable. The presiding officer shall rule on the request to call a member of the court. If the proffer is for the presiding officer to be a witness, the Senate Special Committee on Rules & Procedures for Court of Impeachment shall prepare a report with recommendations that shall be presented to members of the court. Upon review of the report, the question shall be submitted to a vote of the majority of the members present and eligible to serve as jurors without comment or debate.

(e) At any time, the parties, may by agreement proffer the testimony of a member of the court or the presiding officer. Such proffer is not admissible unless the member of the court or the presiding officer who is the subject of the proffer, voluntarily

S.R. No. 35

signs the proffer.

(f) A member of the court who is called as a witness, or whose testimony is provided by proffer, is not subject to removal or recusal from the court of impeachment by any party by virtue of the fact that they are a witness.

(g) In preparation for trial, parties may contact potential witnesses. If a potential witness voluntarily agrees, a party may speak to a witness.

(h) If the presiding officer determines that a request by a party under Rule 21(d) is frivolous, it shall subject the moving party to contempt proceedings.

Rule 22.

**Service of Subpoenas.** The presiding officer is authorized on the request of one of the parties or their counsel to issue subpoenas compelling persons to attend or to produce writings or other items before the court. Subpoenas shall be promptly served by the bailiff, or licensed peace officers in the State of Texas on behalf of the bailiff. Subpoenas are to be served in-person or by certified or registered mail, but where it is impractical to secure service in such manner, subpoenas may be served by leaving a true copy at the usual place of business of the person to be served, by delivering a true copy to anyone over sixteen years of age at the person's usual place of residence, or in any other manner which will be reasonably effective to give the person notice.

S.R. No. 35

Rule 23.

**Form of Subpoena.**

SENATE OF TEXAS

COURT OF IMPEACHMENT

TO THE BAILIFF OF THE COURT OF IMPEACHMENT OR ANY PEACE OFFICER OF THE STATE OF TEXAS

GREETING:

You are hereby commanded to summon

_____

_____

to appear in person before the SENATE OF TEXAS sitting as a COURT OF IMPEACHMENT which will meet at the SENATE CHAMBER in the CAPITOL BUILDING in AUSTIN, TEXAS, on the ____ day of _____, 2023, at _____, then and there to testify and the truth to speak on behalf of _____ in the cause which is before the Court, in which the House of Representatives has impeached Warren Kenneth Paxton, Jr., and there to remain from day to day until discharged by the Court.

Said witness is further commanded to produce at the said time and place the following books, papers, documents or other tangible things as described below:

_____

_____. Herein fail not, but have you this writ in due time before the Court with your return thereon, showing how you have executed the same. Issued and given under my

S.R. No. 35

hand this _____ day of _____, 2023.

_____

Dan Patrick

President of the Senate and

Presiding Officer of the Court of Impeachment


_____

Clerk of the Court

OFFICER'S RETURN ON SUBPOENA

Came to hand on the ____ day of _____, 2023, at _____, and executed on the ____ day of _____, 2023, at _____, by delivering a true copy of this subpoena to _____ _____ _____ the within named witness, at _____ in _____ County, Texas.



_____

Bailiff or any Peace Officer of the State of Texas

Rule 24.

S.R. No. 35

**The Rule.**

(a) Witnesses who are present at trial are to be sworn and placed in the custody of the bailiff and removed from the Senate Chamber to a place where they cannot hear the testimony of other witnesses. This is termed placing witnesses under the Rule. If they are not reached to testify on that day, they will be excused until the next court date and shall be admonished on the Rule. All witnesses listed under Rule 5(e), shall be instructed of Rule 24 prior to commencement of the court of impeachment trial.

(b) Members of the court, the presiding officer of the court, parties, and their counsel are excused from the Rule. The court by vote of the majority of members present and eligible to serve as jurors without debate or comment may excuse other witnesses from the Rule.

(c) No witness under the Rule may be allowed to hear any testimony of other witnesses.

(d) Witnesses under the Rule must be instructed by the presiding officer that they are not to converse with each other or with any other person, except counsel for the parties concerning the proceedings before the court, and are not to read any report, watch any livestream or broadcast of the proceedings, including news reports or social media of, or comment on testimony before the court. A witness violating such instructions may be punished for contempt.

S.R. No. 35

Rule 25.

**Burden of Proof.** The burden of proof is beyond a reasonable doubt and is put upon the House Board of Managers who are entitled to open and conclude the presentation of evidence and argument in the case.

Rule 26.

**Orders and Decisions of the Court.** All orders and decisions of the court shall be made and had by yeas and nays, which shall be entered on the record, and without debate or comment, except when the doors shall be closed for deliberation.

Rule 27.

**Court Deliberation After Final Argument.** After conclusion of argument, the court shall deliberate on the articles of impeachment. The deliberation is in closed session. Before deliberation commences, the presiding officer shall read the following to members of the court:

*"Sustaining an article of impeachment means that the impeached officer is removed from office for the term the officer was last elected. You are instructed that the rules adopted by the court of impeachment establish that the burden of proof rests on the House Board of Managers to prove an article of impeachment beyond a reasonable doubt. You are to determine if the allegation in each article presented to you has been proven beyond a reasonable doubt, and if so, shall the article of impeachment be sustained which would result in removal of office. The final question to be put to*

S.R. No. 35

*you after each article is: "Shall this article of impeachment be sustained?"*

Rule 28.

**Submission of the Final Question.** An article of impeachment is not divisible. Voting occurs separately on each article. After an article has been read, the final question is put: *"Shall this article of impeachment be sustained?",* and each member of the court shall be provided a voting form and shall submit a written vote on the article of impeachment to the clerk of the court to be entered in the record. Immediately after collection of the written votes by the bailiff, the clerk of the court shall randomly select one written ballot at a time and call the member of the court's name and the vote that the member of the court recorded. At the conclusion of reading all members of the court's votes, the clerk of the court shall announce the vote tally and then the presiding officer shall poll the members of the court. As each member of the court's name is called by the presiding officer, he or she shall rise in his or her place and answer yea or nay. If an article of impeachment is not sustained by the votes of the members of the court present, a finding of acquittal is entered as to that article. If an article of impeachment is sustained by the votes of two-thirds of the members present, a finding of conviction is entered as to that article. The vote by which an article of impeachment is sustained or rejected shall not be reconsidered.

Rule 29.

**Judgment of Acquittal.** If no article of impeachment is sustained, a judgment of acquittal is entered. The presiding officer of the court shall prepare a final judgment disposing of all issues in accordance with the decisions of the court. The judgment is entered in the record of the court and a certified copy is deposited in the office of the Texas Secretary of State.

Rule 30.

**Judgment of Conviction.**

(a) If any article of impeachment is sustained, the presiding officer of the court shall prepare a final judgment disposing of all issues in accordance with the decisions of the court. Upon motion by the House Board of Managers to extend the judgment to include disqualification from holding any office of honor, trust, or profit under this State, counsel for each party may present arguments. Upon conclusion of the arguments, the question is put: *"Shall judgment extend to disqualification from holding any office of honor, trust, or profit under this State?"*, and each member of the court, as his or her name is called, shall rise in his or her place and answer yea or nay, which vote shall be entered on the record. The motion shall be adopted if approved by two-thirds of the members of the court present. Upon pronouncement of judgment by the court, a certified copy of the judgment is to be deposited in the office of the Texas Secretary of State. The judgment must extend to removal from office and may extend to disqualification from holding any office of honor, trust, or profit under this

S.R. No. 35

State.

(b) Upon final judgment of either acquittal or conviction of Articles I, II, III, IV, V, VI, VII, VIII, IX, X, XV, XVI, XVII, XVIII, XIX, and XX, any member of the court may make a motion for dismissal of the remaining articles of impeachment held in abeyance. The motion shall be adopted only if approved by a majority of the members of the court present. If adopted, a dismissal in this context does not constitute an acquittal of any charge contained in the articles of impeachment but would constitute a final decision by the Senate on the articles of impeachment and the impeachment would no longer be pending for purposes of Article 15, Section 5, of the Texas Constitution and the court of impeachment would dissolve upon further motion to adjourn *sine die*. If it is not adopted, the date for further proceedings shall then be set by the presiding officer for a time certain in the future.

Rule 31.

**Conflict.** A member of the court who is the spouse of a party to the court of impeachment is considered to have a conflict pursuant to Article III, Section 22, of the Texas Constitution. Such member of the court shall be seated in the court of impeachment pursuant to Article 15 of the Texas Constitution. However, such member of the court shall not be eligible to vote on any matter, motion, or question, or participate in closed sessions or deliberations.

Notwithstanding any other rule, a member of the court who is the

S.R. No. 35

spouse of a party to the court of impeachment shall be considered

present and eligible only for the purpose of calculating the number

of votes required for any and all matters, motions, and questions

under these rules.

JUL 17 2023

CLERK OF THE COURT

SENATE OF TEXAS

COURT OF IMPEACHMENT

GAG ORDER

FINDINGS:

The court finds that there has been extensive publicity surrounding the trial of impeachment of Warren Kenneth Paxton, Jr., and the allegations contained in the articles of impeachment.

The court further finds that out-of-court statements relating to the matters of this impeachment proceeding pose a serious and imminent threat to Warren Kenneth Paxton, Jr.'s, right to a fair trial of impeachment, the ability of the members of the court to remain fair and impartial, and to the fair administration of justice.

While the breadth of publicity related to the trial of impeachment is immeasurable, some specific public actions by individuals involved in the impeachment trial are particularly egregious. Examples of such actions are attached as Exhibit A. The court advises members of the court to not read Exhibit A.

If a member of the court is exposed to extrajudicial statements like those in Exhibit A made by individuals involved in the trial of impeachment, it could impact the member's ability to render a fair and impartial verdict. The court finds that publicity of comments made by individuals involved in the trial of impeachment has been so pervasive, prejudicial, and inflammatory that there is a substantial likelihood that members' initial opinions may not be set aside. Furthermore, there is no jury pool in a trial of impeachment; the members of the court are already determined, and the court may not recompose a jury of individuals who have not witnessed the publicity surrounding the trial of impeachment. Thus, any prejudicial bias that occurs would irreparably taint the impartiality of the court.

The court finds there is a substantial likelihood that members may be inadvertently exposed to prejudicial publicity if an order restricting publicity is not entered. The court finds that individuals involved in the trial of impeachment will likely continue to make public prejudicial and inflammatory statements unless this order is issued. Therefore, the court finds that other less restrictive means will not adequately protect Warren Kenneth Paxton, Jr.'s, right to a fair trial of impeachment and the interests of the House Board of Managers and Warren Kenneth Paxton, Jr., in a fair and impartial court.

**EXHIBIT B**

THE COURT THEREFORE ISSUES THE FOLLOWING ORDER:

Any member of the court; member of the House of Representatives; party to the trial of impeachment; witness in the trial of impeachment; or attorney, employee, or agent of any of these individuals shall not furnish any statement or information, or make or authorize the making of an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication, if the person making the statement knows or reasonably should know that it will have a substantial likelihood of materially prejudicing the trial of impeachment, pose a serious threat to the constitutional guarantees to a fair trial, or impair the court's ability to maintain a fair and impartial court. Such statements and information include, but are not limited to, the following:

1) statements concerning the expected testimony of any party or witness, or the character, reputation or credibility of any party, witness, or attorney involved in the trial of impeachment or members of their office;
2) statements concerning the existence or contents of any statement given by a party, or the refusal or failure of any person related to this trial of impeachment to make a statement;
3) statements concerning the nature of any evidence which may be presented;
4) the identity or nature of any physical evidence expected to be presented;
5) any opinion as to whether the articles of impeachment should be dismissed or sustained against Warren Kenneth Paxton, Jr.;
6) subpoenas issued by the court or information received pursuant to the Discovery Order, a subpoena, or other order of the court; or
7) any information the person knows or reasonably should know is likely to be inadmissible as evidence at the trial of impeachment and would, if disclosed, create a substantial risk of prejudicing an impartial trial or the ability to maintain a fair and impartial court.

Additionally, the attorneys involved in this trial of impeachment shall not make or authorize the making of any statements in violation of Rule 3.07 of the Texas Disciplinary Rules of Professional Conduct.

A person subject to this order is not prohibited by virtue of this order from making out-of-court statements reciting, without comment, information contained in public records, the scheduling or result of any proceeding, the general nature of the proceedings, or any other statement which would not violate the provisions of this order.

Members of the press shall not be prohibited from reporting news accounts concerning the trial of impeachment or from writing about the trial of impeachment. This order does not restrict the publication or broadcasting by members of the press or the news media of any information not otherwise prohibited by law. Nor shall this order be construed to restrict the press or public's access to public documents.

This order is effective immediately and shall remain in effect until final disposition of the trial of impeachment or until further orders of this court are issued. Anyone who violates this order is subject to being held in contempt of court, which is punishable by confinement in county jail for up to six months and/or a fine not to exceed $500.

Signed this ___17th___ day of ___July___, 2023.

_____
Presiding Officer of the Court of Impeachment

# **Exhibit A**

The court advises members of the court to not read Exhibit A

Examples of inflammatory and prejudicial statements:

After the Articles of Impeachment were preferred to the Senate, one of the House Board of Managers authored an opinion article published in major newspapers that used inflammatory and prejudicial language like "harrowing findings of corruption," "shocking pattern of abuse and criminality," and "one overwhelming conclusion." At a press conference, attorneys hired by the House Board of Managers also used inflammatory language including "crook" and "the allegations will blow your mind." Further, a potential witness for the House Board of Managers recently made a press statement calling Warren Kenneth Paxton, Jr., a "coward." Additionally, an attorney for Warren Kenneth Paxton, Jr., used inflammatory and prejudicial language by publicly describing the impeachment as a "sham engineered by someone with a personal vendetta." The attorney also referred to House actions as an "evil, illegal, and unprecedented weaponization of state power" and called the articles of impeachment "bologna."

NO. _____

| | | |
|---|---|---|
| **STEVEN HOTZE, MD, ET AL** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **THE TEXAS SENATE, ET AL** | § | |
| *Defendants.* | § | **____ JUDICIAL DISTRICT** |

### AFFIDAVIT OF STEVEN HOTZE, M.D.

"My name is Steven Hotze, M.D. I am above the age of eighteen years, and I am fully competent to make this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

"I am a registered voter in the state of Texas. I voted in the 2022 Republican Primary and general election. I recently called and texted State Representative Steve Toth to talk to him about the impeachment proceeding involving Attorney General Paxton and the concerns I had with, among other things, the process. Representative Toth responded indicating that he could not speak or communicate with me regarding the impeachment proceedings due to the Gag Order issued by Lieutenant Governor Dan Patrick and the Texas Senate.

I recently called and texted Senator Bob Hall to talk to him about the impeachment proceeding involving Attorney General Paxton and the concerns I had with, among other things, the process. Senator Hall responded indicating that he could not speak or communicate with me regarding the impeachment proceedings due to the Gag Order issued by Lieutenant Governor Dan Patrick and the Texas Senate.

I have also called and texted numerous state representative and senators to discuss and let them know my position on the impeachment proceedings. To date, I have not received a response. In the past, I received prompt responses from state senators and state representatives when I contacted them. Due to the senate Gag Order, I have been prohibited from communicating with state representatives and senators regarding the impeachment of Attorney General Paxton. This violates my rights under the Texas Constitution.

I am a supporter of Attorney General Paxton and disagree with the impeachment and Rules adopted by the Texas Senate for the trial of Attorney General Paxton. I also believe

EXHIBIT C

Senator Angela Paxton should not be excluded from voting or deliberating in the impeachment trial of Attorney General Paxton in the Texas Senate. I believe a few individuals are working to overturn the will of the people as expressed during the November 2022 election where Attorney General Paxton was elected to his third term.

I am asking the Court to grant a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction that would allow me to communicate with my duly elected representatives in the Texas House and Texas Senate.

_____
Steven Hotze, M.D.

STATE OF TEXAS                    )
                                  )
COUNTY OF HARRIS                  )

SWORN TO AND SUBSCRIBED before me on the 27 day of July, 2023.

_____
NOTARY PUBLIC, STATE OF TEXAS

*Steve Hotze Affidavit*

2

**Monday 3:12 PM**

Date Filed: 08/31/2023

Page: 103

Document: 4

Case: 23-40509

Dear Dr. Hotze,

I am sorry, but I am banned from speaking to you about the Paxton Impeachment situation because of Lt. Gov. Patrick's Gag order.

Sen. Bob Hall

EXHIBIT D

Date Filed: 08/31/2023   Page: 104   Document: 4   Case: 23-40509

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| STEVEN HOTZE, M.D.,<br>RICHARD MABRAY, M.D., AND<br>ALLESAN PAIGE STREETER,<br><br>Plaintiffs,<br><br>v.<br><br>THE TEXAS STATE SENATE,<br>AUSTIN OSBORNE, in his official<br>Capacity as the Sergeant-at-Arms of<br>The Texas Senate, and DAN PATRICK,<br>in his official capacity as Lieutenant Governor<br>of the State of Texas,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action<br><br>No. _____ |

## <u>AFFIDAVIT OF STEVEN HOTZE, M.D.</u>

"My name is Steven Hotze, M.D. I am above the age of eighteen years, and I am fully competent to make this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

"Senator Bob Hall is a current member of the Texas Senate. I received the text message in Exhibit "D" from Senator Hall. I am familiar with Senator Hall's personal cell phone number. We have texted to each other using our cell phones numerous times. The number that I received the text from Senator Hall, Exhibit "D", is the same number I have received texts from him in the past. On numerous occasions, I have called Senator Hall at the number I received the text message identified in Exhibit "D". It is a true and correct copy of the text message recently sent to me from Senator Hall in response to my request that he contact me regarding the impeachment of General Paxton. I received the text message in Exhibit "D" from Senator Bob Hall.

*Steven Hotze M.D.*
_____
Steven Hotze, M.D.

STATE OF TEXAS                          §

                                        §

COUNTY OF HARRIS                        §

SWORN TO AND SUBSCRIBED before me on the _____ day of July, 2023.

NOTARY PUBLIC, STATE OF TEXAS

APRIL MARTINEZ
Notary Public, State of Texas
Comm. Expires 01-26-2026
Notary ID 131425279

*Steve Hotze Affidavit*

2

Sunday 11:34 PM

Date Filed: 08/31/2023   Page: 106   Document: 4   Case: 23-40509

Hello Dr Hotze,
I am unable to speak on the record about the impeachment proceedings due to gag order by the Court. I hope you can understand.
Best Regards
Rep Steve Toth.

EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **STEVEN HOTZE, M.D.,** | ) | |
| **RICHARD MABRAY, M.D., AND** | ) | |
| **ALLESAN PAIGE STREETER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action** |
| **v.** | ) | |
| | ) | |
| **THE TEXAS STATE SENATE,** | ) | |
| **AUSTIN OSBORNE, in his official** | ) | **No. _____** |
| **Capacity as the Sergeant-at-Arms of** | ) | |
| **The Texas Senate, and DAN PATRICK,** | ) | |
| **in his official capacity as Lieutenant Governor** | ) | |
| **of the State of Texas,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF STEVEN HOTZE, M.D.

"My name is Steven Hotze, M.D. I am above the age of eighteen years, and I am fully competent to make this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

"Steve Toth is a current member of the Texas House of Representatives. I recently received the text message in Exhibit "E" from Representative Toth. I am familiar with Representative Toth's personal cell phone number. We have texted to each other using our cell phones numerous times. The number that I received the text message from Representative Toth, Exhibit "E", is the same number I have received texts from him in the past. On numerous occasions, I have called Representative Toth at the number I received the text message identified in Exhibit "E". I read the text message in Exhibit "E". It is a true and correct copy of the text message recently sent to me from Representative Toth in response to my request that he contact me regarding the impeachment of General Paxton.

_____
Steven Hotze, M.D.

*Steve Hotze Affidavit*

1

STATE OF TEXAS            §
                                       §

COUNTY OF HARRIS     §



SWORN TO AND SUBSCRIBED before me on the 28th day of July, 2023.

NOTARY PUBLIC, STATE OF TEXAS

*Steve Hotze Affidavit*

2

Case: 23-40509      Document: 4      Page: 108      Date Filed: 08/31/2023